[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 29, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14354

_____

D. C. Docket No. 03-60237-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GLENN F. STRAUB,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(November 29, 2007)**

Before ANDERSON and PRYOR, Circuit Judges, and VINING,* District Judge.

PRYOR, Circuit Judge:

_____

* Honorable Robert L. Vining, Jr., United States District Judge for the Northern District
of Georgia, sitting by designation.

Glenn Straub appeals his conviction of criminal contempt for violating a court order that prohibited his presence on the premises of Broward Yachts while an unfinished hull that belonged to Seagrove Trading, Inc., was removed from the premises. See 18 U.S.C. § 401(3). Straub argues that the evidence adduced at trial was insufficient to support his conviction because the order was not lawful and reasonably specific and any violation of the order was not willful. Before reaching the merits, we conclude that the district court had jurisdiction over the charge of criminal contempt even though the court that issued the order lacked maritime jurisdiction over the underlying controversy about the unfinished hull. We reject Straub's arguments on the merits, because the evidence that he refused to leave the premises after a deputy marshal read to Straub the relevant portion of the order was sufficient to support his conviction. We affirm.

## I. BACKGROUND

Glenn Straub was the president of Broward Yachts, Inc., which provided dockage, storage, and haul-out services for a partially completed yacht known as Destiny Hull that was owned by Seagrove Trading, Inc. Broward Yachts filed an in rem action against the hull to recover unpaid fees. On June 23, 2003, the district court dismissed the action for lack of subject matter jurisdiction because the unfinished hull did not qualify as a vessel for the purpose of invoking maritime

2

jurisdiction, and we affirmed.  Broward Yachts v. Vessel Known as Destiny Hull, 107

Fed. App'x 183 (11th Cir. 2004) (unpublished table decision).

On March 6, 2003, before the district court dismissed the suit, the court issued

a warrant for the arrest of the hull.  On March 19, 2003, the district court ordered the

release of the hull in return for a bond posted by Seagrove.  Because the parties could

not agree on the terms and logistics of the transfer, the district court issued a series

of orders clarifying the obligations of the parties.  On April 15, 2003, the district

court issued an order that outlined the procedure for the transfer and prohibited

Straub's presence on the premises during the removal:

> Accordingly, it is hereby
>
> ORDERED that Broward shall make the Travelift available to Seagrove's Contractors, at such time as they can again be mobilized, for use in moving Hull No. 4 from Broward's shed into the water.  Seagrove may also use cranes, trucks or other equipment necessary to assist in the removal of the hull, engines, and any of its other property still located on Broward's premises, and Broward shall provide Seagrove's Contractors full access to its premises, including the launching facilities, for such purposes.  Upon placement of Hull No. 4 in the water, Seagrove will be responsible for towing Hull No. 4 to another location of its choosing.  Seagrove will provide Mega Marine and Broward twenty four hours' written notice of its intent to use the Travelift.
>
> IT IS FURTHER ORDERED that the United States Marshal is hereby directed to use such force as may be necessary to ensure that Seagrove's Contractors have the unobstructed use of the Travelift and have unobstructed access to Broward's premises and the launching facilities as ordered herein until Hull No. 4, the engines, and Seagrove's

3

other property are removed from Broward's premises, and to prevent any party, third party, or other person or entity from interfering with, or otherwise obstructing or preventing the move from taking place when Seagrove's Contractors are mobilized.

. . . .

IT IS FURTHER ORDERED that Mr. Glenn Straub shall not interfere in any manner with the removal of Hull No. 4 and Seagrove's other property, and shall not be present on Broward's premises during the removal.

The hull was removed from Broward's property on April 18, 2003. While the hull was in the water secured to a slip, Straub arrived at the facility. Deputy United States Marshal Jerome Retto read to Straub the relevant portions of the order that prohibited Straub's presence on the premises. Retto told Straub that he would be held in contempt if he remained on the property and that, if he was arrested, he could not bring personal property with him. Straub then entered the Broward Yachts building to leave his personal effects. When Straub returned, Retto told Straub that he could avoid arrest if he waited in the parking lot. Straub refused to leave and was arrested.

After a bench trial before a magistrate judge, Straub was convicted of criminal contempt. Straub appealed the judgment to the district court, and the district court affirmed. The district court concluded that (1) Straub had failed to preserve for appeal his arguments about (a) the lawfulness of the underlying order and the applicability of the collateral bar rule and (b) the specificity of the term "premises";

4

(2) the order was reasonably specific; and (3) Straub violated the order willfully.

## II. STANDARDS OF REVIEW

To review the sufficiency of the evidence that supports an order of criminal contempt, we determine whether the evidence, construed in the light most favorable to the government, permits a finding of guilt beyond a reasonable doubt. United States v. Bernardine, 237 F.3d 1279, 1281–82 (11th Cir. 2001). When the defendant does not preserve an argument for appeal, we review for plain error, United States v. Lewis, 492 F.3d 1219, 1221–22 (11th Cir. 2007), which requires the petitioner to establish (1) that there was error; (2) that was plain; (3) that affected his substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceeding. Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1180 (11th Cir. 2002) (citing United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999)). An error is plain if it is "clear" or "obvious." United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777 (1993).

## III. DISCUSSION

Our discussion is divided in two parts. First, we consider sua sponte whether the district court had jurisdiction over the charge of criminal contempt even though the court that issued the order lacked subject matter jurisdiction over the underlying controversy. We hold that the district court had jurisdiction over the charge of

5

criminal contempt. Second, we consider Straub's argument that the evidence was insufficient to support his conviction because the government did not establish that the order was lawful and reasonably specific and that he willfully violated the order. We conclude that Straub's arguments fail, and we affirm.

*A.  The District Court Had Jurisdiction over the Charge of Criminal Contempt.*

Before we consider the merits of the appeal, we address sua sponte whether the district court had subject matter jurisdiction over a charge of criminal contempt based on the violation of an order issued by a court that lacked subject matter jurisdiction over the underlying controversy. See Eagerton v. Valuations, Inc., 698 F.2d 1115, 1118 (11th Cir. 1983). At our request, the parties addressed this issue in their oral arguments. We conclude that, notwithstanding the ultimate dismissal of the underlying controversy for lack of subject matter jurisdiction, the district court had jurisdiction over the charge of criminal contempt.

The Supreme Court has held that a district court may impose sanctions, under Federal Rule of Civil Procedure 11, for conduct that occurred during a proceeding in which the court lacked subject matter jurisdiction, Willy v. Coastal Corp., 503 U.S. 131, 112 S. Ct. 1076 (1992), and the two-fold reasoning of that decision is instructive. First, the Willy Court explained that, because the imposition of Rule 11 sanctions did not require an assessment of the legal merits of the complaint, the

6

district court did not adjudicate a controversy over which it lacked jurisdiction when it imposed the sanctions. Id. at 138, 112 S. Ct. at 1080–81. Second, the Court distinguished Rule 11 sanctions from civil contempt, which requires subject matter jurisdiction over the underlying controversy. Id. at 138–39, 112 S. Ct. at 1081; see also U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76–80, 108 S. Ct. 2268, 2270–73 (1988). Civil contempt is remedial and aims to force compliance with an order of the court. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441–42, 31 S. Ct. 492, 498 (1911). The punishment for civil contempt continues until the contemnor chooses to comply with the order. Id. at 442, 31 S. Ct. at 498. Rule 11 sanctions, in contrast, are punitive. Willy, 503 U.S. at 139, 112 S. Ct. at 1081. Their purpose is to punish a party who has already violated the rules of the court. Id.

The difference in purpose between a sanction for civil contempt and a punitive sanction under Rule 11 determines whether the absence of subject matter jurisdiction in the underlying proceeding affects the validity of the sanction. The interest of the court in levying sanctions for civil contempt disappears if the court lacks subject matter jurisdiction, because the purpose of civil contempt is to force compliance with an order. Id. The interest of the court in imposing punitive sanctions under Rule 11 does not disappear if the court lacks subject matter jurisdiction, because the court

7

retains an interest in parties' obedience to its authority. Id.

Both aspects of the reasoning of Willy apply to Straub's conviction for criminal contempt. First, as with Rule 11 sanctions, the adjudication of a charge of criminal contempt does not require an assessment of the legal merits of the underlying controversy, so the court that hears the criminal contempt charge does not adjudicate a controversy over which it lacks jurisdiction. Whereas "[p]roceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause[,] . . . proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." Gompers, 221 U.S. at 444–45, 31 S. Ct. at 499. Second, like Rule 11 sanctions, a sanction for criminal contempt is punitive and aims to vindicate the authority of the court. Id. at 441, 31 S. Ct. at 498. Rule 11 sanctions and criminal contempt both differ from civil contempt, which is remedial and aims to force compliance with an order of the court. Id.

Although we have stated in dicta that "if the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, its order may be violated with impunity," In re Novak, 932 F.2d 1397, 1401 (11th Cir. 1991) (citing In re Green, 369 U.S. 689, 82 S. Ct. 1114 (1962); Ex parte Fisk, 113 U.S. 713, 718, 5 S. Ct. 724, 726 (1885); United States v. Dickinson, 465

8

F.2d 496, 511 (5th Cir. 1972)), that language should be construed narrowly. We relied upon two decisions of the Supreme Court in which the court that issued the order either lacked or might have lacked jurisdiction to issue the order itself, and each of these decisions is distinguishable.

The first decision we cited in our dicta in Novak was Fisk, in which the court that issued the order had subject matter jurisdiction over the underlying controversy but lacked jurisdiction to issue the order. Fisk, 113 U.S. at 726, 5 S. Ct. at 730. In Fisk, a federal court had ordered the defendant in a civil suit to submit to a deposition, but the Supreme Court determined that a federal statute prohibited the court from ordering the deposition. 113 U.S. 713, 5 S. Ct. 724. The district court in Straub's case, in contrast, lacked jurisdiction over the underlying controversy but issued an order that was otherwise within the authority of the court.

The second decision we cited in Novak was Green, in which the court that issued the order might have lacked jurisdiction to issue the order as a result of federal preemption. In Green, a state court had issued a restraining order that prohibited a union from picketing. 369 U.S. at 690, 82 S. Ct. at 1115. The Supreme Court held that the state court violated the defendant's due process rights when it held him in contempt without providing him with a hearing to establish whether the restraining order was preempted by federal law. Id. at 692–93, 82 S. Ct. at 1116–17. The Court

9

explained that the contempt conviction could not stand if the restraining order was preempted by federal law. Id. at 692, 82 S. Ct. at 1117. Green, like Fisk, did not involve a situation analogous to Straub's case, in which the court lacked subject matter jurisdiction over the underlying controversy but issued an order that was otherwise within its authority. The dicta in Dickinson, which was a decision of our predecessor court that we also cited in Novak, relied largely on Green. Dickinson, 465 F.2d at 511 & n.16.

The decision of the Supreme Court in Willy resolves this issue. We conclude that the district court had subject matter jurisdiction to resolve the charge of criminal contempt against Straub. Our dicta in Novak is inapposite.

*B. Straub's Arguments That the Evidence Was Insufficient Fail.*

To convict Straub of criminal contempt, the government had to establish that the court entered a lawful order of reasonable specificity that Straub willfully violated, Bernardine, 237 F.3d at 1282 (quoting United States v. Maynard, 933 F.2d 918, 920 (11th Cir. 1991) (per curiam)). Straub makes three arguments that the evidence against him was insufficient. First, Straub argues that the order was not lawful because it fell within two exceptions to the collateral bar rule, which prevents defendants in criminal contempt proceedings from raising the invalidity of the order as a defense. Second, Straub argues that the order was not reasonably specific

10

because the terms "removal" and "premises" were ambiguous. Third, Straub argues that his violation of the order was not willful. Each of these arguments fails.

1. Straub's Arguments About the Lawfulness of the Order and the Collateral Bar Rule Fail.

Straub argues that the order that he was charged with violating fell within two exceptions to the collateral bar rule and, as a result, was not "lawful." Ordinarily, the collateral bar rule operates to prevent defendants in criminal contempt proceedings from raising the invalidity of the order as a defense. Novak, 932 F.2d at 1400–01; Dickinson, 465 F.2d at 509–10. A defendant may appeal the order but may not disobey the order and challenge it collaterally in a criminal contempt proceeding unless certain exceptions are met. Novak, 932 F.2d at 1401–03; Dickinson, 465 F.2d at 511–12. Straub argues that "adequate and effective remedies [did not] exist for orderly review of the challenged ruling," Novak, 932 F.2d at 1401; accord Dickinson, 465 F.2d at 511, and that the order "require[d] an irretrievable surrender of constitutional guarantees," Novak, 932 F.2d at 1401; Dickinson, 465 F.2d at 511.

The government argues that our review of this issue is for plain error, but Straub argues that he preserved this issue in his motion for a judgment of acquittal under Rule 29 when he argued that the government must prove that the court entered a lawful order of reasonable specificity. According to Straub, his motion preserved

11

his argument about the collateral bar rule because an order that falls within an exception to the collateral bar rule is not a "lawful order" as required by section 401(3). To preserve an issue for appeal, "one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." United States v. Dennis, 786 F.2d 1029, 1042 (11th Cir. 1986). The objection must be raised "in such clear and simple language that the trial court may not misunderstand it." United States v. Massey, 443 F.3d 814, 819 (11th Cir. 2006) (quoting United States v. Riggs, 967 F.2d 561, 565 (11th Cir. 1992)) (internal quotation mark omitted).

Straub's objection was insufficient to apprise the court of the grounds for appeal. Straub did not raise it in such clear and simple language that the trial court could not misunderstand. After objecting that the order had not been a lawful order of reasonable specificity, Straub's counsel explained only why he believed that the order was not reasonably specific. Straub's counsel failed to suggest that he intended to raise an objection based on the collateral bar rule or on the ground that the order was not lawful. Because Straub did not preserve this argument for appeal, we review for plain error. See Brough, 297 F.3d at 1180.

Straub argues that because the hull was removed only three days after the order of April 15 was entered, "adequate and effective remedies [did not] exist for orderly

12

review of the challenged ruling." Novak, 932 F.2d at 1401; accord Dickinson, 465 F.2d at 511. In Walker v. City of Birmingham, the Supreme Court rejected the argument that adequate remedies did not exist when two days separated the issuance of an ex parte injunction and the march that it enjoined. 388 U.S. 307, 318–19, 87 S. Ct. 1824, 1831 (1967). In the light of Walker, the district court did not commit plain error.

Straub also argues that because the order required him to surrender temporarily his property rights in the Broward Yachts facility and the Travelift, the order "require[d] an irretrievable surrender of constitutional guarantees." Novak, 932 F.2d at 1401; Dickinson, 465 F.2d at 511. We have suggested that to fall within this exception the order must cause irreparable harm by irrevocably depriving the contemnor of a constitutional right. See Dickinson, 465 F.2d at 512–13. Straub cites no authority for the proposition that requiring his temporary absence from the property was an irrevocable deprivation. Again, the district court did not commit plain error.

### 2. The Order Was Reasonably Specific.

Straub next argues that the order that he was charged with violating was not reasonably specific. Determining whether an order is reasonably specific involves a factual inquiry that must consider the context in which the order was entered and

the audience to which the order was addressed. Bernardine, 237 F.3d at 1282 (quoting In re McDonald, 819 F.2d 1020, 1024 (11th Cir. 1987) (per curiam)). "An order meets the 'reasonable specificity' requirement only if it is a 'clear, definite, and unambiguous' order requiring the action in question." In re E.I. DuPont De Nemours & Co.–Benlate Litigation, 99 F.3d 363, 370 (11th Cir. 1996) (quoting United States v. Koblitz, 803 F.2d 1523, 1527 (11th Cir. 1986)). Straub argues that the order was not reasonably specific because the term "removal" could have meant "moved from the shed to the water" instead of "fully launched and towed away."

Straub's argument fails. The order of April 15 provided instructions for "moving Hull No. 4 from Broward's shed into the water" and for "removal of the hull, engines, and any of [Seagrove's] other property still located on Broward's premises." The purpose of the order would have been undermined if it had prohibited Straub's interference with the transfer of the hull to the water but not the towing of the hull. The evidence, viewed in the light most favorable to the government, was sufficient to support the conclusion that the order was reasonably specific about the meaning of the term "removal."

Straub also argues that the term "premises" was not reasonably specific because it left unclear whether the water and boat slip were included within the meaning of "premises." Because Straub did not raise this issue during the contempt

14

proceeding, we review for plain error. See Brough, 297 F.3d at 1180. Although the order of April 15 referred initially to the "premises" as "including the launching facilities" but later listed the "premises" and the "launching facilities" separately, the purpose of the order would have been undermined if it had not prohibited Straub's presence at the launching facility. It was not plain error for the district court to conclude that the evidence, viewed in the light most favorable to the government, was sufficient to determine that the order was reasonably specific about the term "premises."

### 3. The Violation Was Willful.

Straub argues that he did not willfully violate the order because the order was ambiguous. Willfulness "means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." United States v. Baldwin, 770 F.2d 1550, 1558 (11th Cir. 1985) (quoting Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 782 (9th Cir.1983)) (internal quotation marks omitted). Straub's argument fails.

When we view the evidence in the light most favorable to the government, we conclude that Straub's behavior was not the product of reasonable confusion or misunderstanding. While Straub stood at the launching facility, Retto warned Straub several times that he would be arrested if he did not leave the premises, and Retto

15

read to Straub the relevant portion of the order of April 15. Straub even went inside the Broward Yachts building to leave his personal effects after Retto informed him that if he was arrested he could not bring personal property with him. After Straub returned, Retto advised Straub that he could wait in the parking lot, but Straub still refused to leave. This evidence was more than sufficient to support a finding that Straub violated the order willfully.

## IV. CONCLUSION

Straub's criminal contempt conviction is

**AFFIRMED**.