[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13154
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 24, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:09-cr-00079-PCF-DAB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMY RYAN MOHR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 24, 2011)

Before EDMONDSON, HULL and PRYOR, Circuit Judges.

PER CURIAM:

After pleading guilty, Jeremy Ryan Mohr appeals his 120-month sentence

for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

On appeal, Mohr argues that his sentence, which was the advisory guidelines sentence, is substantively unreasonable. After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

In October 2008, an investigator with the Brevard County Sheriff's Office was conducting an investigation to identify individuals using peer-to-peer file sharing software on the Internet to distribute images of child pornography. The investigator identified someone using an IP address that had 22 files available for download with titles indicating that they were child pornography. The investigator downloaded one of the files and confirmed that it was a video depicting a female child between the ages of eight and ten years old engaging in sex acts with an adult male.

The IP address belonged to Michael Mohr, Defendant Jeremy Ryan Mohr's father. Officers executed a search warrant at Michael Mohr's residence. During the search, officers seized a desktop computer, CDs, DVDs and floppy disks. Subsequent forensic examination revealed 262 movies containing child pornography and 47 images of child pornography that had traveled in interstate commerce by computer via the Internet. Some of the movies showed girls as young as six or eight in bondage or engaging in sex acts with an animal. The

National Center for Missing and Exploited Children advised that 84 of the movies and 47 of the still images depicted known victims.

Michael Mohr told the officers that he shared the residence with his twenty-five year old son, Defendant Jeremy Ryan Mohr. After being advised of his Miranda rights, Defendant Mohr admitted to the officers that he had been downloading images of child pornography for about two and a half years. Defendant Mohr confirmed that, although he shared the computer with his father, he stored the child pornography in password protected folders, that he was the only person who knew the password and that his father did not know he was downloading child pornography.

## B. Violations of Pretrial Release

On June 30, 2009, Defendant Jeremy Ryan Mohr was arrested and released on bond. While on bond, Mohr violated the terms of his pretrial release four times. On September 28, 2009, Mohr tested positive for marijuana use. As a consequence, Mohr's bond was modified to include substance abuse testing, education and treatment. On December 24, 2009, Mohr had an altercation with his father and was arrested on state battery charges. After a bond modification hearing, Mohr was released with the added conditions of electronic monitoring and home confinement. Nonetheless, Defendant Mohr violated the pretrial release

3

terms again when he drove his car without permission, got into an accident and was cited for careless driving. After a February 5, 2010 hearing, Mohr was ordered to remain on bond with the same conditions.

While being transported to that hearing, Mohr made death threats against his father. Pretrial Services filed another violation petition, and a warrant was issued for Mohr's arrest. On February 8, 2010, a magistrate judge revoked Mohr's bond, and Mohr remained in federal custody.

## C.    Guilty Plea and PSI

Defendant Mohr was charged with, and pled guilty to, one count of possession of child pornography. During his plea hearing, Mohr admitted that in 2008 he knowingly downloaded images of child pornography using his computer and a program called Limewire.

The Presentence Investigation Report ("PSI") calculated a total offense of 33 using U.S.S.G. § 2G2.2. The PSI recommended no reduction for acceptance of responsibility because, although Mohr had pled guilty, he had violated his pretrial release conditions multiple times. With a criminal history category of I, the PSI recommended an initial advisory guidelines range of 135 to 168 months. However, pursuant to U.S.S.G. § 5G1.1(a), because the low end of that range exceeded Mohr's statutory maximum sentence of 120 months, the advisory

guidelines sentence became 120 months' imprisonment. Mohr's only written objection to the PSI was its failure to give him a three-level reduction for acceptance of responsibility.

## D. Sentencing Hearings

At the first sentencing hearing, Defendant Mohr moved to withdraw his guilty plea, stating that he was innocent and that the "real culprit" was his father. The district court rescheduled the hearing so that Mohr could file a written motion to withdraw his guilty plea and the government could respond. Thereafter, Mohr withdrew his motion to withdraw his guilty plea.

When Mohr's sentencing hearing resumed, Mohr again objected to the PSI's failure to give him a three-level acceptance of responsibility reduction. The district court overruled Mohr's objection, noting that the reduction was inappropriate because Mohr had not voluntarily terminated criminal conduct, as evidenced by some of Mohr's pretrial release violations. The district court adopted the PSI's factual statements and found that Mohr's offense level was 33 and his criminal history category was I. Because the resulting advisory guidelines range exceeded Mohr's 120-month statutory maximum, the district court found that the advisory guidelines sentence was 120 months.

Mohr called forensic psychologist Dr. Ted Shaw, an expert in sex offender

evaluation and treatment, who had examined Mohr and prepared a psychosexual evaluation.[1] Dr. Shaw testified that Mohr suffers from an "unusual personality . . . characterized by immaturity and . . . passive-aggressive features," as well as being "resentful of authority." Dr. Shaw opined that Mohr exhibited "borderline features, which is another type of personality" marked by "a lot of highs and lows." Dr. Shaw said that a borderline personality is "kind of explosive and unstable," which explained Mohr's conduct while on pretrial release.

Dr. Shaw concluded, based in part on polygraph exam results, that Mohr was not a "contact" sex offender, that is, Mohr had not molested a child. According to Dr. Shaw, studies showed that the recidivism rate for child pornography viewers was much lower than recidivism rate for contact sex offenders. Dr. Shaw explained that Mohr could benefit from a new four-year treatment program using cognitive behavior therapy designed for "individuals whose primary problem was viewing child pornography."

According to Dr. Shaw, Mohr continued to maintain that the child pornography found on the computer he shared with his father was "his dad's material," and that his father "entreated him to take responsibility for possession,"

_____

[1]Although the report was submitted to the district court during the hearing, a copy of the report does not appear to be in the record.

6

because he would receive a "very light" sentence. As Mohr "progressed through the legal proceedings" and "realized that . . . the penalties were higher, . . . he changed his position." Dr. Shaw's testing, however, indicated that Mohr had a sexual interest in school-age girls between the ages of six and eleven.

Dr. Shaw considered Mohr "to be a low risk" for re-offending and that the risk could be further lowered through supervision and sex offender treatment. Additionally, though Mohr continued to deny responsibility for the child pornography, Dr. Shaw testified that denial was not uncommon, that deniers remained amenable to treatment and that studies had found "no clear correlation between denial and recidivism." Dr. Shaw believed that Mohr's greatest challenge, after being released from custody, would be complying with the conditions of supervised release rather than with re-offending or engaging in a contact sex offense.

The government called forensic psychologist Dr. Howard Bernstein, an expert on the recidivism risk of sex offenders. Dr. Bernstein reviewed Dr. Shaw's report, but did not examine Mohr. According to Dr. Bernstein, individuals with the personality disorders diagnosed by Dr. Shaw can be treated but were "somewhat resistant to treatment" and often "face an uphill battle for rehabilitation and stabilization." Dr. Bernstein explained that the offender characteristics for

Mohr's combination of personality disorders — which included, inter alia, resistance to authority, sullenness, irritability, restlessness, increased hostility, issues with intense relationships, self-harm, co-dependency, fear of abandonment and impulsiveness in substance abuse and sexuality — were "risk-facilitating" factors rather than rehabilitation factors. Dr. Bernstein opined that the denial of criminal conduct is a "form of deception" and is also a "risk-enhancing factor."

In mitigation, Mohr pointed out that he has family support when he is released from custody. Arguing that the district court should avoid unwarranted sentence disparities, Mohr pointed to a case in which the district court had "recently downward departed" and given a three-year sentence. Mohr contended the case was similar because that defendant (named Riley), like Mohr, had only viewed child pornography, was younger and had no prior criminal history. Mohr stressed that: (1) he had resolved the conflict with his father, which was the basis for his conduct while on pretrial release; (2) Dr. Shaw's testimony indicated Mohr was at low risk for recidivism and was treatable; and (3) he had no prior criminal history. Mohr asked for a four-year sentence, which was the length of time needed for sex offender treatment.

The district court denied Mohr's request for a sentence below the 120-month advisory guidelines sentence. The district court explained that the offense

was "extremely serious, particularly with sadistic images of children that were on the computer and with the fact that the viewers of child pornography perpetuate the market in this medium and create the demand which further victimizes the children." The district court considered letters from the children whose images were found in the child pornography Mohr possessed and the "horror that they have lived through, both in the creation of the images [and] the continuing experience when they talk about how they are humiliated and assaulted with the repeated viewings and through downloading by people of child pornography, there just can be no denial of the seriousness of the offense." Although recognizing that Mohr had no prior criminal history, and that he was "relatively young," the district court noted that Mohr had downloaded child pornography for two and a half years, even though he knew it was illegal.

Regarding the potential for recidivism and the need to protect the public, the district court explained that it tries to make an individual determination in each case: "I try to get to the heart of what is going on and make a realistic evaluation of the danger of the person to society and how likely re-offending would be." Addressing Mohr, the district court continued, "And in your case, I have been given very little comfort that you acknowledge what you have done and that you could affirmatively state that, in your heart and to the Court, that you would not be

involved in this again. It's a very troubling aspect of your case," which the district court said was different from Riley's case.

Additionally, the district court considered Mohr's violations of his pretrial release terms, specifically, the threats and assault against his father, his refusal to obey the probation officer, and his continued drug use, stating: "It appears to me that you have really thumbed your nose at the law since you've been arrested . . . . [A]nyone else who had been arrested would have realized how serious the charges were and would have walked the straight and narrow . . . to straighten themselves out and . . . conform with the law."

Although the district court acknowledged that Mohr had not been involved in the distribution of child pornography, the court stated: "Congress has made very, very strong statements in the laws that have been enacted pertaining to child pornography, and I am cognizant of that." Additionally, the district court noted the large number of images and the types of images involved, which "weigh[] in favor of . . . the seriousness of the crime and the length of the sentence of imprisonment."

Focusing on the need to avoid unwarranted sentencing disparities, the district court further distinguished Mohr's case from Riley's case:

> I have thought at length about some of the other people I have had

10

to sentence for this, and I would further distinguish Mr. Riley's case. He was an older gentleman than you. He admitted his involvement in child pornography. He had been for many years a faithful respiratory therapist and highly respected in his work at a hospital here. He was alo an adjunct professor.

He did not have the personality issues that were present in the testimony here today. He did not have the family threats or the personality disorder characteristics, and therefore I had greater confidence in his ability to overcome the problems that he was facing and to come back and complete his career . . . .

Finally, although the psychological reports and expert testimony revealed that Mohr was "treatable" and that he wasn't "a pedophile . . . a sexual predator," the district court concluded that "this case requires prison and a long period of supervised release to give [Mohr] the greatest chance for rehabilitation and to become productive."

The district court sentence Mohr to 120 months' imprisonment, followed by fifteen years' supervised release. The district court recommended that Mohr receive mental health treatment, sex offender treatment, drug treatment and the opportunity to take college-level courses. Mohr filed this appeal.

## II. DISCUSSION

We review the substantive reasonableness of a sentence for abuse of discretion in light of the totality of the circumstances. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The party challenging the sentence bears

the burden of establishing that the sentence is unreasonable in light of both the record and the § 3553(a) factors.[2] United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). We ordinarily expect a sentence within the advisory guidelines range will be reasonable. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008). We will remand for resentencing only when the district court commits "a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2010).

Here, Mohr has not shown that his 120-month sentence is substantively unreasonable.[3] For over two years, Mohr downloaded from the Internet and stored on his computer 262 movies and 47 images of child pornography. Some of the child pornography depicted bestiality and bondage of children between the ages of six and eight years old. As the district court pointed out, by downloading these images, Mohr contributed to the child pornography market, thus encouraging the

---

[2]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

[3]Mohr does not argue that his sentence is procedurally unreasonable.

creation and distribution of more such materials and the further victimization of young children.

Although Mohr pled guilty, he continued to deny his culpability and broke the law by using marijuana and assaulting his father while on pretrial release. Dr. Shaw's psychological evaluation indicated that Mohr was attracted to prepubescent girls and that he had various personality disorders that could impede his rehabilitation (according to Dr. Bernstein) and his ability to comply with supervised release (according to Dr. Shaw). Under the totality of the circumstances we cannot say the district court's refusal to vary downward from the 120-month advisory guidelines sentence was an abuse of discretion.

Although Mohr quarrels with the amount of weight the district court gave the various § 3553(a) factors, "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and we will not substitute our judgment in weighing the relevant factors." United States v. Amedeo, 487 F.3d 823, 832 (11th Cir. 2007) (quotation marks and brackets omitted). The record clearly demonstrates that the district court carefully considered all the mitigating factors Mohr argues about on appeal, including the

13

need to avoid unwarranted sentencing disparities,[4] Dr. Shaw's psychological assessment of Mohr and Mohr's lack of a prior criminal history. For example, the district court explicitly noted Mohr's youthful age and family support and acknowledged Dr. Shaw's opinion that Mohr was not a sexual predator and that possessors of child pornography like Mohr were treatable. The district court concluded, however, that those mitigating factors did not warrant a sentence below the advisory guidelines sentence. Troubled by Mohr's failure to take responsibility for his criminal conduct and his repeated pretrial release violations and concerned about the seriousness of the crime, the need for deterrence and protection of the public and the need to provide Mohr educational, medical and other treatment, the district court determined that the 120-month advisory guidelines sentence was necessary. We reject Mohr's contention that the district court's reliance upon Mohr's repeated violations of his pretrial release conditions and failure to take responsibility for his crime was unreasonable, as those findings were supported by the record. See Gall, 552 U.S. at 56-57, 128 S. Ct. at 600 (concluding that district court did not commit reversible error by "attach[ing] great

---

[4]Mohr's appellate brief newly asserts that a district court case, United States v. Halbsgut, No. 10-cr-90-Orl-28-GJK, demonstrates an unwarranted sentencing disparity. The facts and circumstances of the Halbsgut case are not in the record, however, and thus cannot show a sentencing disparity, much less an unwarranted one.

14

weight" to one factor).

For the first time on appeal, Mohr argues that the district court should not have given deference to U.S.S.G. § 2G2.2, the guidelines provision used to calculate child pornography offenses such as Mohr's. Because Mohr did not assert this argument in the district court, we review only for plain error. United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2008).

Mohr essentially makes a Kimbrough-style argument that U.S.S.G. § 2G2.2 should be disregarded because it is based on flawed policy considerations. See Kimbrough v. United States, 552 U.S. 85, 109-10, 128 S. Ct. 558, 575 (2007) (concluding that because the Sentencing Commission "did not take account of 'empirical data and national experience'" in formulating the crack/powder cocaine disparity in the Sentencing Guidelines, a district court does not abuse its discretion by concluding that the disparity yields a sentence greater than necessary "even in a mine-run case"). This Court has already concluded that the provisions of U.S.S.G. § 2G2.2 "do not exhibit the deficiencies the Supreme Court identified in Kimbrough." Pugh, 515 F.3d at 1201 n.15. Even if such deficiencies arguably existed and permitted the district court to vary downward in a mine-run child pornography case, nothing in Kimbrough suggests a district court would be required to do so. Accordingly, the district court did not commit plain error when

it concluded, in its discretion, that an advisory guidelines sentence based on

U.S.S.G. § 2G2.2 was necessary in Mohr's case.

**AFFIRMED.**