[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14616
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cr-00007-RH-CAS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACQUELYN V. MYERS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 27, 2013)

Before TJOFLAT, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

A jury convicted Jacqueline Myers on three counts of workers'

compensation fraud, in violation of 18 U.S.C. §1920, and one count of health care

fraud, in violation of 18 U.S.C. § 1347.[1]  She appeals, arguing that the District

Court erred in denying her Rule 29 motion for judgment of acquittal.  *See* Fed. R.

Crim. P. 29.[2]  We affirm.

## I.

Myers was a letter carrier for the United States Postal Service.  She injured

her back on May 9, 2009, while pulling a container of food out of the back of her

postal vehicle.  In the months following her injury, Myers saw several doctors who

recommended that she be placed on light duty.  The Postal Service assigned her to

light duty, which consisted of sitting in an office and reading training manuals.

Her doctors also prescribed various treatments, including physical therapy.  While

Myers was receiving the treatments, she continued her long-standing practice of

running in competitions and participating in triathlons.  She also drove hundreds of

miles to compete in these events.  She did not tell her doctors or physical therapists

that she was doing all of this.  When the Postal Service learned that she had been

running in competitions, it decided to investigate.  The investigation led to the

indictment in this case.

## II.

---

[1] Myers was tried on a multi-count superseding indictment charging three counts of workers' compensation fraud, in violation of 18 U.S.C. § 1920; fourteen counts of wire fraud, in violation of 18 U.S.C. § 1343; and one count of health care fraud, in violation of 18 U.S.C. § 1347.  She was acquitted on the wire fraud counts.

[2] Myers does not appeal her sentences: concurrent terms of probation and restitution in the sum of $26,714.

We review the denial of a motion for judgment of acquittal *de novo*, "consider[ing] the evidence in the light most favorable to the [g]overnment, [and] drawing all reasonable inferences and credibility choices in the [g]overnment's favor." *United States v. Friske*, 640 F.3d 1288, 1290-91 (11th Cir. 2011) (quotation omitted).  We will not overturn a jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* at 1291.

Workers' compensation fraud was charged in Counts 1, 2 and 3 of the indictment.  To support a conviction for such fraud, the Government must prove that the defendant: (1) "knowingly and willfully"; (2) "falsifie[d], conceal[ed], or cover[ed] up a material fact, or ma[de] a false, fictitious, or fraudulent statement or representation, or ma[de] or use[d] a false statement or report knowing the same to contain any false, fictitious, or fraudulent statement or entry"; (3) "in connection with the application for or receipt of compensation or other benefit or payment." 18 U.S.C. § 1920.

We conclude that a reasonable jury could have found Myers guilty on Counts 1 and 2 of the indictment on the basis that she made false representations to her doctors, causing them to submit false CA-17 forms recommending that she remain on light duty even though she was capable of returning to regular duty.  In June 2009, Myers told her first doctor that she had the same level of pain as she

3

had shortly after she was injured the month before, that she had a "weird pain" in her left leg when she took a step, and that she did not think that physical therapy was working.  A second doctor testified that when he saw Myers in June 2009, she complained of discomfort in her lower back.  Both doctors testified that they submitted the CA-17 forms continuing Myers on light-duty status based on Myers's representations and how she presented herself during her physical examination.  Moreover, the second doctor submitted a CA-17 form restricting Myers from driving at work.

The evidence showed that, despite these reports of pain and discomfort that led to workplace restrictions, on June 5, 2009, Myers resumed competitive running, competing in multiple races per weekend and even per day, and driving for hours to get to the events.  Myers continued to complain of pain to her physical therapists, even after she had begun to compete in triathlons that required her to bike, bent over, for miles.  One of her physical therapists testified that Myers's ability to compete in running events was inconsistent with the high level of pain that she reported.  Furthermore, one of Myers's coworkers testified that she saw Myers lifting a large box from inside her car.  When Myers realized that her coworker had seen her, she looked "shocked," and tried to distract her.  Finally, an investigator from the Office of the Inspector General testified that he saw Myers

4

bending over to shake out her car's floor mats and to remove debris from her windshield wipers while carrying her large purse on her back.

In sum, the jury was entitled reasonably to infer that Myers's statements to her doctors falsely exaggerated her pain and other symptoms, causing them to submit what Myers knew to be false CA-17 forms.  Her convictions on Counts 1 and 2 are accordingly affirmed.

As to Count 3, Myers presents an argument she did not present to the District Court, that the evidence showed that the third doctor did not actually submit a false CA-17 form as charged in the indictment.  "To preserve an issue for appeal, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought.  The objection must be raised in such clear and simple language that the trial court may not misunderstand it." *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quotations and citation omitted).  When a defendant presents a sufficiency-of-the-evidence argument on appeal that she did not make in the District Court, we assess the argument under the plain error doctrine.  *See id*. at 1010-11 (concluding that plain error review was appropriate when the appellant's evidentiary sufficiency argument on appeal was different from the argument he made in the district court).  We will only correct error under that doctrine if there was: (1) error, (2) that was plain, (3) that affected the defendant's substantial

5

rights, and (4) the error "seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Id.* at 1008. "An error is plain if it is clear or obvious." *Id.* (quotations omitted).

Count 3 alleged that Myers caused her doctor to submit a false CA-17 form, and the court instructed the jury accordingly. However, the CA-17 form applicable to Count 3 returned her to regular duty, and thus did not contain a false statement. Hence, no reasonable jury could have found Myers guilty of Count 3. The District Court's denial of Myers's motion as to Count 3 was a "clear or obvious" error, so the question becomes whether the error affected Myers's substantial rights and, if it did, whether the "fairness, integrity, or public reputation of the judicial proceeding" was also affected, the fourth plain error element. The error did affect Myers's substantial rights, but, in light of the overwhelming evidence of guilt on Counts 1 and 2, which alleged the same offense as Count 3, we do not find the fourth element present. The conviction on Count 3 therefore stands.

## III.

To support a conviction for health care fraud under 18 U.S.C. § 1347, the Government must prove that the defendant: (1) knowingly and willfully executed a scheme to (2) defraud a health care program or to obtain by false or fraudulent pretenses money or property under the custody or control of a health care program,

(3) "in connection with the delivery of or payment for health care benefits, items, or services." *Id.* § 1347.

In the mail fraud context, we have explained that participating in a scheme or artifice to defraud "requires proof of a material misrepresentation." *United States v. Bradley,* 644 F.3d 1213, 1238 (11th Cir. 2011) (quotation omitted), *cert. denied*, 132 S. Ct. 2375 (2012). Also in the mail fraud context, we have held that "in a health care fraud case, the defendant must be shown to have known that the claims submitted were, in fact, false." *United States v. Medina*, 485 F.3d 1291, 1297 (11th Cir. 2007). The Government may rely on circumstantial evidence to establish the specific intent to defraud. *United States v. Suba*, 132 F.3d 662, 675 (11th Cir. 1998). However, when the Government relies upon circumstantial evidence, "reasonable inferences, not mere speculation, must support the conviction." *United States v. Mendez*, 528 F.3d 811, 814 (11th Cir. 2008).

The Government presented sufficient evidence for a jury reasonably to infer that Myers willfully executed a scheme to defraud a health care program by making false statements to her physicians, causing them to order treatment, medications, and physical therapy that was not needed. Myers told her physical therapists and her doctors that she was unable to mow the lawn and experienced discomfort from the therapy exercises, while at the same time she competed in races and triathlons. Shortly after she was injured, Myers began running in

multiple races in one weekend or in one day. She competed every weekend from June until December 2009, and her race times improved from the times recorded before her injury. She came in first for her gender and age category in a Georgia state-wide running competition, while continuing to complain to her doctors and her physical therapists that she was in pain.

One of Myers's physical therapists testified that the level of pain that Myers reported was inconsistent with her ability to compete in running events. Myers told one of her doctors that she was in constant pain, was not getting better, and could not bend, even though she had been competing in triathlons which required her to bend over a bike for miles at a time. In addition, one of Myers's coworkers testified that when she saw Myers picking up a large box from inside Myers's car, Myers tried to distract her.

Moreover, another of Myers's doctors testified that if he had been aware of Myers's extensive physical activities, he would not have continued to recommend light duty, and two of Myers's physical therapists testified that they would have progressed Myers to a more aggressive form of therapy if they had been aware of her capabilities. Another doctor testified that he would have prescribed a different course of treatment if he had been aware of Myers's activities. He changed his recommendation of light duty to regular duty after he learned of the extent of her running, because her level of race participation was incompatible with light duty.

8

Although the Government did not present evidence specifying the different course of treatment that Myers may have received if she had been more forthcoming with her doctors, the jury was entitled to infer that Myers knew that the CA-17 forms submitted by her doctors were false, and that she therefore participated in a scheme to defraud a health care program by receiving health care services that she would not have received had she been honest.  Myers's conviction for health care fraud is accordingly affirmed.

AFFIRMED.

JORDAN, Circuit Judge, concurring in part and dissenting in part.

I concur in the Court's opinion in all respects but one.  Given that the government failed to prove that the form submitted on November 30, 2009, contained any false statements, the evidence—as the Court notes—was insufficient as to Count 3.  I would set aside Ms. Myers' conviction on Count 3, for in my view "affirming a conviction where the government has failed to prove each essential element of the crime beyond a reasonable doubt 'affect[s] substantial rights,' *and* seriously impugns 'the fairness, integrity and public reputation of judicial proceedings.'"  *United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir. 1997) (emphasis added and citation omitted).