**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Benjamin CROWDER,**
**Defendant–Appellant.**

No. 15–10895
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

March 14, 2016.

Terry Flynn, U.S. Attorney's Office, Tallahassee, FL, Robert G. Davies, U.S. Attorney's Office, Pensacola, FL, Pamela C. Marsh, Gregory Patrick McMahon, U.S. Attorney's Office, Gainesville, FL, for Plaintiff–Appellee.

Chet Kaufman, Randolph Patterson Murrell, Richard Michael Summa, Federal

Public Defender's Office, Tallahassee, FL, for Defendant–Appellant.

Before HULL, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Michael Crowder appeals his convictions for two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341. On appeal, Crowder argues that there was not sufficient evidence at trial to prove his intent to defraud. After careful consideration, we affirm.

## I.

The evidence at trial showed that between 2009 and 2014, Crowder owned and operated a limited liability company called M & H Coins and Precious Metals ("M & H") that dealt in coins and bullion. Initially, Crowder seems to have successfully completed a number of transactions through M & H: he would take orders from customers, buy the ordered coins from wholesalers, and then deliver the coins to customers. But things took a bad turn. Crowder began accepting large sums of money from customers without fulfilling their orders or returning their money.

One of the victims in this case, William Foschini, testified that he wired Crowder several payments beginning in 2009, totaling $250,000, to invest in coins.[1] Crowder assured Foschini that he had invested the money in coins and sent Foschini what appeared to be earnings statements showing profits from this venture. However, when Foschini asked to cash out in 2011, Crowder refused to send Foschini his money. After several weeks of delay, Crowder revealed that he had actually invested Foschini's money in real estate, without Foschini's consent. Crowder continued to assure Foschini that he would get his money back, but Foschini never did.

Another victim, Paul Florence, testified that he ordered 100 ounces of gold coins from Crowder and mailed him a check for $165,700. After a week, Florence called Crowder, who assured him that the coins would arrive soon. A few weeks later, Crowder told Florence that the coins had been shipped via registered mail but the tracking number was unavailable. Crowder continued to reassure Florence about the coins over the course of months, even offering to hand-deliver them himself. Florence never received his order or his money back.

At trial, the government called several other witnesses who testified that they had been involved in similar unsuccessful transactions with Crowder. For instance, a bullion trader named Don Ashley ordered silver coins from Crowder in November 2011. Ashley wired Crowder $35,585 for two of the three boxes he had ordered. Crowder then told Ashley that he was having supply problems and offered a refund, which Ashley accepted. But Crowder issued a refund for only one of the boxes. Ashley eventually tried to use his "credit" for the rest of his unreturned payment to purchase platinum from Crowder. In a series of transactions, Ashley paid for more and more platinum, while Crowder continued to assure him that the metal would arrive. Crowder even sent Ashley a fake tracking number. Ashley

---

1. Crowder moved a substantial portion of one of these wire transfers directly from M & H's bank account into his personal bank account on the same day it was received.

never received either the platinum or a refund.

The government also presented evidence that Crowder used these funds for speculative real estate ventures, commodity futures trading, luxury cars, and gambling. In an e-mail from Crowder to Foschini, Crowder admitted to lying about investing Foschini's money in coins. An FBI agent testified that Crowder admitted he used Florence's $165,000 payment for commodities trading and lost the money. Crowder also admitted to losing another customer's $180,000 payment in the same manner. Two witnesses testified that Crowder purchased a series of luxury cars within a short span of time in 2011. And Crowder testified that he lost significant sums of money gambling at casinos.

## II.

We review the sufficiency of the evidence *de novo*, drawing all reasonable inferences in the government's favor. *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir.2005). However, we review for plain error arguments about the sufficiency of the evidence that are raised for the first time on appeal. *See United States v. Straub*, 508 F.3d 1003, 1010–11 (11th Cir.2007). Plain error requires a showing of: (1) an error; (2) that was plain; (3) that affected a defendant's substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 1008.

Evidence is sufficient to support a conviction if "a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt." *United States v. Diaz–Boyzo*, 432 F.3d 1264, 1269 (11th Cir.2005) (per curiam) (quotation omitted). The evidence need not exclude every reasonable hypothesis of innocence, and the jury is free to disbelieve witness testimony. *Hernandez*, 433 F.3d at 1334–35. If a defendant chooses to testify, the jury may not believe him and may consider disbelieved statements as substantive evidence against him. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir.1995). Viewed alongside "some corroborative evidence of guilt," a defendant's testimony denying guilt "may establish, by itself, elements of the offense." *United States v. Williams*, 390 F.3d 1319, 1326 (11th Cir.2004). This is particularly true for subjective elements like intent. *Id.*

## III.

Crowder argues that there was not sufficient evidence at trial to prove his intent to defraud. He claims that, because he did not have a fiduciary relationship with his customers, their payments became his personal property upon receipt.[2] And because he intended to fulfill his customers' orders at the time he accepted their payments, any misrepresentations he made later cannot establish his intent to defraud.

To the extent Crowder's argument relies on the existence or nonexistence of a fiduciary relationship, his reliance is misplaced. A fiduciary relationship is not pro-

---

**2.** Crowder did not raise this argument before the district court, so we review it for plain error. Although Crowder contends he adequately presented this argument below, the record shows that he did not raise it in either of his motions for acquittal. In fact, fiduciary relationships were mentioned only once at trial, when Crowder stated on cross-examination that "[t]here was no fiduciary relationship with [his customers]." This statement did not adequately present the argument. A litigant must raise his argument "in such clear and simple language that the trial court may not misunderstand it," rather than "obscurely hint[ing]" at it. *United States v. Reyes–Vasquez*, 905 F.2d 1497, 1500 (11th Cir.1990) (quotation omitted).

bative of whether the defendant committed wire or mail fraud, which both require only that the defendant: (1) intentionally participated in a scheme to defraud; and (2) used or caused the use of the wires or mail to execute the scheme. *United States v. Ward*, 486 F.3d 1212, 1221–22 (11th Cir. 2007). This Court has rejected the idea that, in analyzing fraud, the focus is on the victim's characteristics. *See United States v. Svete*, 556 F.3d 1157, 1165–68 (11th Cir. 2009) (en banc) ("[T]he focus of the mail fraud statute, like any criminal statute, is on the violator."). Crowder's focus on the victim's business relationship with him is improper. Some might say that a more careful buyer would not have sent such large sums of money to Crowder without greater protections. But we have rejected the principle of caveat emptor when it comes to fraud, because regardless of the victim's characteristics, "the defendant has criminal intent." [3] *Id.* at 1165.

Crowder also argues that he lacked the intent to defraud at the time he accepted his customers' payments. Intent to defraud exists "when the defendant believed that he could deceive the person to whom he made the misrepresentation out of money or property." *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir.2009) (quotation omitted). "The Government need not produce direct proof of scienter in a fraud case [ ]; circumstantial evidence of criminal intent can suffice." *United States v. Hawkins*, 905 F.2d 1489, 1496 (11th Cir.1990). Intent to defraud may be inferred from the defendant's conduct, including evidence that he personally profited from the scheme. *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011). For instance, this Court has found sufficient evidence of intent to defraud

where the defendant used funds obtained through the fraud for "purchases for himself, including a suite at the Doubletree Hotel, a luxury car rental, and expensive clothing." *United States v. Ellisor*, 522 F.3d 1255, 1272 (11th Cir.2008).

There was sufficient evidence here for a reasonable jury to find that Crowder had the intent to defraud. Although Crowder's theory that he lacked the intent to defraud when he accepted his customers' money is one possible interpretation of the evidence, the evidence need not exclude every reasonable hypothesis of innocence. *See Hernandez*, 433 F.3d at 1334–35. Rather, the jury was entitled to infer Crowder's intent to defraud from his conduct. *See Naranjo*, 634 F.3d at 1207. Witnesses testified that Crowder repeatedly lied to them in order to conceal his actual uses of the money he took, and these lies even induced Ashley and Foschini to make additional purchases from Crowder. At one point, Crowder told a lawyer trying to recover funds from him that he "kn[e]w how to play this game," and that "[y]ou'll never collect anything from me." The evidence also shows that Crowder transferred a substantial customer payment from M & H's bank account directly into his personal bank account on the day it was received.

While Crowder testified that he was investing through M & H to hedge against price changes in the bullion markets and that he fully intended to repay his customers, the jury was free to disbelieve these statements. Likewise, the jury was free to discredit Crowder's testimony that he purchased a series of luxury cars for himself to reduce M & H's tax liability, and that he engaged in high-stakes gambling "to get [his customers] back their money." In fact, the jury was entitled to consider

**3.** Indeed, as we noted in *Svete*, "[t]he laws protecting against fraud are most needed to protect the careless and the naïve from lupine predators, and they are designed for that purpose." 556 F.3d at 1167 (quotation omitted).

these statements as substantive evidence against Crowder. *See Brown,* 53 F.3d at 314.

Because there was sufficient evidence for a jury to reasonably conclude that Crowder intended to defraud his customers, we affirm.

**AFFIRMED.**