[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11034
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cr-00083-LSC-TFM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TAWANDA AEIAH SEARS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 15, 2018)

Before TJOFLAT, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

On September 6, 2016, Tawanda Aeiah Sears stood trial in the Middle District of Alabama.  She was charged with one count of carjacking under 18 U.S.C. § 2119, and one count of using a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii).

The evidence showed that in August of 2014, a man named Jeffrey Allen responded to an online ad for an unusually inexpensive 1989 Mercury Grand Marquis with chrome rims.  He spoke to the seller, Stanley Hinton, and arranged to drive from his home in Butler County, Alabama, to make the purchase in Columbus, Georgia.  But when Allen arrived at the service station where they had agreed to meet, Hinton, accompanied by an associate named Jacinto Robinson, told Allen they would have to drive a few miles down the road to pick up the car from Hinton's home.  When Allen got there, he saw Sears watching them from Hinton's front porch.  Hinton introduced her as his girlfriend.  Allen also noticed another man inside the house.  At one point the man stepped outside, and Sears turned toward him and said the words "not here."

Despite the unusual circumstances, Allen went ahead with the purchase.  He paid Hinton for the car in cash, and Sears wrote up a bill of sale that she and Allen both signed.  Allen, however, departed without receiving the vehicle's title, though Hinton assured him he had it and promised to send it in the coming days.  Only

much later would Allen learn that Sears had actually pawned the vehicle's title in order to get a loan several months before.

A few days later, Allen received a call from Sears letting him know that the car's chrome rims were actually leased and not yet fully (or even close-to-fully) paid off. She gave him the option of paying off the balance (around $1,000) or returning them. Allen, however, sought a third option: return the Grand Marquis, rims and all, and get his money back. Sears apparently agreed to that, and Allen arranged to meet Hinton at a gas station in Opelika, Alabama, to drop off the car and recover his money.

When Allen arrived, he saw a silver Dodge Charger parked on the premises. Hinton was seated in the passenger's seat, Sears in the driver's seat, and Robinson in the back. Allen could see no one else in the Charger. Hinton and Robinson got out and told Allen they heard a "tapping" noise coming from the Grand Marquis's engine, and after inspecting it, they insisted on taking it for a short test drive. Robinson climbed in to take the wheel, but Allen grew suspicious and seated himself in the passenger's seat. Together they drove slowly around towards the back of the gas station near some diesel fuel pumps, when suddenly Robinson hit the accelerator. Allen reacted quickly and swung the gear shift into park, bringing the Grand Marquis to a halt. Sears, however, drove the Charger up right behind them, and a man emerged from the vehicle pointing a handgun at Allen. Perhaps

3

needless to say, Allen got out.  The gunman, who turned out to be Delricco Ray Jones, then got in the Grand Marquis, and Robinson sped off as Sears followed closely behind in the Charger.  No one ever returned Allen's money.

All of this came out at trial via testimony from a number of witnesses—most notably Allen himself, who walked through his firsthand knowledge of the major events.  Other witnesses fleshed out the details.  Lisa Denae Johnson, a local pawn shop employee, testified that Sears had taken out a loan from her in January of 2014, providing the title to a 1989 Mercury Grand Marquis as collateral.  She testified that Sears's loan was not fully paid off until June 4, 2014.  Danny Thomasson, the accounts manager at a Columbus, Georgia, tire shop, testified that in July of 2014, Sears (along with a number of cosigners) rented a set of twenty-six-inch chrome rims for a 1989 Mercury Grand Marquis, and that the rims were not fully paid off until September 6, 2014.  Elicia Allen, Jeffrey Allen's cousin, testified that she accompanied him to Opelika and witnessed the carjacking.  She specifically mentioned that while she "didn't get a good look" at the Charger, she could see "two males and a female, and the female was driving."  And John Hester, a detective with the Opelika Police Department, testified that in an interview with Sears in October of 2014, Sears initially denied ever having been to Opelika but soon admitted that she had gone there the month before "to get the car back from Jeffrey Allen because there was an issue over the title."

4

When the government finished putting on all of its evidence, Sears moved for acquittal under Federal Rule of Criminal Procedure 29.  Sears's counsel stated that the government "failed to meet their burden of proof in the case," but declined the court's invitation to point out anything specific on which that position relied The court denied the motion without further explanation.  Sears did not renew her motion after that.

In its closing jury instructions, the district court gave an instruction on an aiding and abetting theory of liability.  After deliberating, the jury found Sears guilty of carjacking but deadlocked as to the use of a firearm.  The district court later sentenced Sears to 120 months in prison for carjacking and dismissed the firearm count.

On appeal, Sears does not dispute that someone committed a carjacking; she argues instead that the government did not present sufficient evidence to prove she knowingly participated in it.  Sears contends that "she was a mere dupe in this case," that "[t]here was no proof presented that she knew anything about a gun being used to take the car back," and that the prosecution "never established that Sears had full knowledge of the circumstances constituting the whole crime."  As noted, however, Sears declined to cite specific grounds upon moving to dismiss her case at trial.

5

When a defendant fails to raise and preserve a specific sufficiency-of-the-evidence challenge, we review for plain error only. *See United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016); *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007); *United States v. Hunerlach*, 197 F.3d 1059, 1068 (11th Cir. 1999).

Under 18 U.S.C. § 2, an individual can be punished for any specific crime if she "aids, abets, counsels, commands, induces or procures its commission." The government must prove three elements to convict under this theory: "(1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered the offense; and (3) the defendant intended to aid in its commission." *United States v. Williams*, 865 F.3d 1328, 1347 (11th Cir. 2017) (quoting *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000)). The requisite evidence can be direct or circumstantial. *United States v. Sosa*, 777 F.3d 1279, 1293 (11th Cir. 2015).

We conclude that ample evidence supported the inference that Sears intentionally aided and abetted the carjacking. Most significantly, Sears drove the Charger from which Jones emerged with the gun, then sped off to follow Jones and Robinson in the Grand Marquis afterward. Delivering up the assailant and driving the getaway car is the quintessential case of aiding and abetting a crime. *See, e.g.*, *United States v. Thompson*, 610 F.3d 1335, 1338 (11th Cir. 2010); *United States v.*

6

*Pendegraph*, 791 F.2d 1462, 1465-66 (11th Cir. 1986).   What's more, the jury had plenty of evidence that far from being a dupe, Sears willingly played a central role in the scheme from the beginning.  The evidence showed Sears pawned the Grand Marquis's title and leased the chrome rims well before the fraudulent sale to Allen, a transaction she herself consummated by signing the bill of sale.  Sears was the one to inform Allen that the rims were leased, and, after Allen and Hinton made arrangements to meet again, Sears showed up at the Opelika gas station driving the other participants in the Charger.  A jury could reasonably have inferred that someone so involved every step of the way would have intended to help Jones, Hinton, and Robinson recover the Grand Marquis by force.

The evidence sufficed to find Sears guilty of aiding and abetting a carjacking.  The district court committed no plain error in reaching that conclusion.

**AFFIRMED.**