[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15544
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 9, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:10-mc-00063-MCR-EMT-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY DICKSTEIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 9, 2011)

Before HULL, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Following a bench trial, Jeffrey Dickstein appeals his conviction for

criminal contempt, in violation of 18 U.S.C. § 401(3) and Federal Rule of

Criminal Procedure 42(a). Dickstein argues that the government's evidence was insufficient to support the district court's finding that he willfully violated a court order. After review, we affirm.

## I. BACKGROUND FACTS

### A. Dickstein Retained by the Hirmers

Because Dickstein challenges the sufficiency of the evidence, we review the evidence presented at his bench trial.

Defendant Dickstein is an attorney licensed in California and experienced in representing tax protestors. Dickstein began representing Claudia and Mark Hirmer after they and eleven others were charged with conspiracy to defraud the Internal Revenue Service, conspiracy to commit money laundering, tax evasion and wire fraud. The charges arose out of the Hirmers's involvement in an organization that promoted anti-tax theories and tax-avoidance schemes through lectures, products and presentations.

After the Hirmers's arrest, Dickstein filed a notice of appearance, advising that, although the Hirmers had not retained him, he would represent them at their initial appearance.[1] Dickstein's notice of appearance acknowledged that, because

---

[1] Dickstein was already representing the Hirmers in a civil abusive tax shelter case filed in the Northern District of Florida.

of the indictment's forfeiture allegation, the Hirmers might not have funds to retain him and that he did not know "whether alternate financing [was] available." Dickstein stated that: (1) pursuant to Local Rule 11.1(G), he would not represent the Hirmers more than seven days after arraignment if alternate financing was not available; and (2) he was filing a "temporary notice of appearance for the purpose of appearing at the September 2, 2008 detention hearing and arraignment, and to further assist [the Hirmers] until such time as he must withdraw from representation for non-payment of fees."[2]

Dickstein represented the Hirmers at their September 2, 2008 arraignment, where they pled not guilty. On September 8, Dickstein filed a motion to continue trial based on the complexity of the case and the voluminous discovery. In the motion, Dickstein stated, inter alia, that he had agreed to represent the Hirmers, but, due to the forfeiture allegations, "it [was] unlikely he [would] receive much, if any, compensation until such time as the trial is completed, and only if the Hirmers [were] acquitted" on the money laundering conspiracy count.

**B.      District Court's Verbal Order Not to Withdraw Based on Nonpayment**

---

[2]Northern District of Florida Local Rule 11.1(G) states that the court expects retained counsel in criminal cases to represent a defendant to the conclusion of the case unless the court is notified of the retained counsel's withdrawal within seven calendar days after arraignment and that, after the seven-day period expires, the "[f]ailure of a defendant to pay sums owed for attorney's fees or failure of counsel to collect a sum sufficient to compensate for all the services usually required of defense counsel will not constitute good cause . . . ." N.D. Fla. L.R. 11.1(G).

At a September 16, 2008 hearing on the continuance motion, the district court and Dickstein discussed whether the Hirmers would have funds available to prepare the kind of defense Dickstein wanted to prepare. The district court asked Dickstein whether he was representing the Hirmers even though he "anticipate[d] not being paid, or perhaps not being paid for this representation." Dickstein responded, "Unfortunately, yes." The district court then stated:

> With that understanding, I'm sure you can appreciate, the Court is not going to entertain a motion to withdraw. You have that understanding. You were knowledgeable about their financial circumstances at the time you agreed to represent them. I'm not going to entertain a motion to withdraw based on lack of compensation.

Dickstein and the district court discussed the possibility of the Hirmers filing a request for appointment of counsel, but Dickstein stated that he did not want to do so because the Hirmers wanted him to represent them and he was not a member of the district court's Criminal Justice Act ("CJA") panel.

## C.     District Court's Standing Order

On September 23, 2008, the district court entered a Standing Order and Notice to Retained Criminal Defense Attorneys ("Standing Order"). The Standing Order: (1) required Dickstein "to make financial arrangements that are satisfactory to [him] and sufficient to provide for representation of each defendant until the conclusion of the defendant's case," which included "services to be rendered upon

4

appeal"; (2) advised that Dickstein was expected to represent the Hirmers until the conclusion of the case, unless, within seven days, the court received written notice of his withdrawal; and (3) stated that "[f]ailure of a defendant to pay the attorney's fees or failure of counsel to collect a sum sufficient to compensate for all the services usually required will not constitute good cause for withdrawal after the seven-day period."

## D.     Dickstein's Post-Trial Motion to Withdraw

Dickstein did not withdraw within the seven-day period. Instead, after the Hirmers paid Dickstein $100,000 on October 17, 2008, Dickstein filed a Notice of Continued Representation on November 17, 2008, indicating that the Hirmers wanted Dickstein to continue representing them. Dickstein represented the Hirmers over the next eighteen months, up to and through the month-long jury trial.[3] On March 31, 2010, the jury found the Hirmers guilty on all counts. The Hirmers's sentencing hearing was set for July 2010.

On April 26, 2010, Dickstein filed a motion to withdraw "in light of [Dickstein's] not receiving payment for services rendered to date, and the inability

---

[3]A portion of Dickstein's pre-trial representation included a Sixteenth Amendment challenge to the indictment. When the district court denied Dickstein's motion to dismiss the indictment on Sixteenth Amendment grounds, Dickstein filed a writ of mandamus with this Court, which was denied, and a petition for a writ of certiorari with the Supreme Court, which was denied.

of the Hirmers to pay for services to be rendered in the future."  Dickstein's

motion stated that: (1) the Hirmers's initial retainer came from a loan obtained

from Claudia Hirmer's mother because Dickstein refused to accept payment from

funds that might be subject to forfeiture; (2) "Dickstein continued to represent the

Hirmers despite not being paid a substantial portion of his accrued attorney's fee, a

condition Dickstein accepted when the Court indicated by Order that failure to

receive payment of fees would not constitute good cause for withdrawal 'until the

conclusion of the defendant's case'";[4] (3) the Hirmers had not made arrangements

to pay the remaining portion of his trial fee, which "put [Dickstein] in severe

financial straits, rendering him unable to pay current expenses for rent, food,

utilities and other bills, as he devoted his full time and efforts solely to

representing the Hirmers"; (4) as a result, Dickstein was "vacating his home/office

on Friday, April 30, 2010," would "lose phone and internet service on Thursday,

April 29, 2010," and did not know where he would move "as there are also no

funds to rent another home/office"; (5) Dickstein resided in Wisconsin and did not

have the funds to travel to Florida for the sentencing hearing or to pay the fees to

---

[4]In the district court, Dickstein submitted in camera a statement that the Hirmers had paid
him a total of $146,219.06 in fees and costs and that an additional $308,210.67 in fees and costs
remained unpaid.  According to attached itemized statements of time, costs and trust account
standing, by December 2009, Dickstein had incurred $259,200 in fees and $14,002.74 in costs
and the trust account had a balance of $216.32.

file an appeal and order a transcript; (6) the Hirmers had not responded to Dickstein's April 16, 2010 letter asking whether they wished Dickstein to continue representing them and, if so, how they intended to pay for the representation; and (7) Dickstein believed he had fully discharged his duties on behalf of the Hirmers and that, in light of the Hirmers's refusal to pay his fees and his need to vacate his residence, he could not "continue to faithfully represent the Hirmers and to present their best interests."

The district court denied Dickstein's motion to withdraw, explaining that, per its Standing Order, Dickstein was expected to make financial arrangements sufficient to provide for representation until the conclusion of the case, which contemplated appeal, and the failure of payment was not good cause for withdrawal. The district court noted the complexity of the case and the time it would take another lawyer to become adequately familiar with the facts. In an effort to protect the Hirmers under the circumstances, the district court found that they were financially unable to employ counsel and appointed Dickstein as CJA counsel.

## E. Dickstein's Motion for Reconsideration

Dickstein filed a motion asking the district court to reconsider appointing him as CJA counsel. Dickstein argued that he had not accepted the CJA

appointment and that his payment under the CJA would be reduced by amounts he had received as retained counsel. He also cited new conflicts of interest and irreconcilable differences and contended that he was unable to provide the Hirmers with quality representation due to his past dealings with them.[5] Among other things, Dickstein stated that because he held the Hirmers directly accountable for his dire financial situation, he no longer possessed the detached neutrality necessary to provide adequate representation and was unwilling to continue representing them.

At a June 3, 2010 hearing on the motion, Dickstein reiterated his arguments and stated that he understood the Standing Order to require him to remain counsel to the time of perfecting appeal, not through appeal. Claudia Hirmer told the district court that she and her husband felt abandoned by Dickstein and indicated that they did not want Dickstein to continue representing them because he did not "have [their] best interest[s] at heart anymore." The district court acknowledged that it had not followed the usual procedures for making a CJA appointment. Stating that it was "left with no choice," the district court granted Dickstein's

[5]Specifically, Dickstein's motion asserted that: (1) a third party had told Dickstein that Claudia Hirmer said Dickstein was not entitled to any more money and had failed to provide adequate representation due to alcohol consumption; (2) after the Hirmers's convictions, the Hirmers's son-in-law, who had power of attorney, had agreed to pay Dickstein $5,000, but never did and stopped communicating with Dickstein; and (3) a conflict of interest arose that stemmed from a civil case based on the same transactions, in which he represented the Hirmers and others.

motion for reconsideration and discharged him as counsel of record for the Hirmers.[6]

## F.    Dickstein's Criminal Contempt Trial

On August 18, 2010, the district court filed a notice and order of criminal contempt proceedings, charging Dickstein with violating the court's September 23, 2008 Standing Order and its verbal order given at the September 16, 2008 hearing.

At a bench trial for the criminal contempt charge, Dickstein testified, <u>inter alia</u>, that the Hirmers paid him a total of $146,000, but that his billing for his work on the criminal case exceeded that amount by January 2009 and that he used his own money to fund the defense thereafter.  By the end of the Hirmers's trial, Dickstein said, he was "[a]bsolutely broke, plus credit card debt for expenses [he] incurred on behalf of the Hirmers."  Dickstein understood the district court's Standing Order and verbal order in September 2008 to mean that "the mere nonpayment would not be grounds to withdraw," but that the orders did not preclude him from filing a motion to withdraw if "other issues" arose.  Dickstein explained that his motion to withdraw included grounds other than the mere fact of

---

[6]On June 11, 2010, the district court appointed the Hirmers each CJA counsel, and the Hirmers were sentenced on October 27, 2010.

9

nonpayment, namely his inability to pay rent, buy food or maintain a law office with a telephone and access to the Internet. Thus, Dickstein did not think that he was violating the court's orders when he filed his motion to withdraw. Dickstein said that he filed the motion to withdraw in order to comply with the ethical code of the Florida Bar and the California Rules of Professional Conduct. However, Dickstein admitted that the additional grounds raised in his motion for reconsideration (involving conflicts of interest and irreconcilable differences) were based on "new stuff" that transpired after his motion to withdraw was filed.

At the conclusion of the hearing, the district court adjudicated Dickstein guilty of criminal contempt. After reviewing the evidence, the district court stated, "The timing of some of what I've just gone over with you convinces me that the reason for the motion to withdraw . . . and Mr. Dickstein's unwillingness to continue representing the Hirmers was their failure to pay him any money following trial." The district court found that the other reasons Dickstein gave for withdrawal were "simply a trumped up pretext for the real reason, which is the fact that they didn't pay him any more money." The district court noted that Dickstein did not present any evidence supporting his claim to have been a homeless pauper at the time he filed the motion to withdraw. The district court rejected Dickstein's testimony that he was unable to continue representing the Hirmers, stating, "You

were not unable, and you didn't even say you were unable in those motions."

The district court sentenced Dickstein to ninety days in custody, but allowed

Dickstein to stay at liberty pending appeal to this Court.

The district court subsequently issued a written order and judgment

reiterating its reasons and conclusions. Specifically, the district court found

beyond a reasonable doubt that: (1) its September 16, 2008 verbal order and its

September 23 Standing Order were lawful and reasonably specific; (2) Dickstein

violated those orders by moving to withdraw "based explicitly on [the Hirmers's]

nonpayment of his fees, which was the very act the court's orders were designed to

prevent"; and (3) Dickstein's violation was willful.

As to Dickstein's willfulness, the district court found "incredulous"

Dickstein's testimony that he would have continued representing the Hirmers if

the district court had denied his motion for reconsideration. The district court

stated that the "dry transcript" of the hearing on the motion for reconsideration

"d[id] not adequately convey the tone taken by Dickstein with the court, but it was

clear to the [district court] at the time that Dickstein had effectively and

unilaterally ended his representation of the Hirmers based on their failure to pay

his fees and had made up his mind not to continue, regardless of what the court

ordered." The district court found Dickstein's "subsequently offered reasons" for

11

his withdrawal proposed in his motion for reconsideration to be "mere after thought" and "pretextual." Dickstein filed this appeal.

## II. DISCUSSION

To support a conviction for criminal contempt, "the government must prove: (1) that the court entered a lawful order of reasonable specificity; (2) the order was violated; and (3) the violation was willful." United States v. Robinson, 922 F.2d 1531, 1534 (11th Cir. 1991). Dickstein argues that there is insufficient evidence only as to the third element, that is, that he willfully violated the court's orders. A violation of an order is willful if it is "'a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order.'" United States v. Straub, 508 F.3d 1003, 1012 (11th Cir. 2007) (quoting United States v. Baldwin, 770 F.2d 1550, 1558 (11th Cir. 1985)). "Under this standard of intent, behavior amounting to a reckless disregard for the administration of justice is sufficient to support a conviction when violative of a reasonably specific court order." United States v. Burstyn, 878 F.2d 1322, 1324 (11th Cir. 1989).[7]

Here, the evidence, viewed in the light most favorable to the government, was sufficient to support the district court's finding that Dickstein willfully

---

[7]In reviewing the sufficiency of the evidence in support of an order of criminal contempt, we determine "whether the evidence, construed in the light most favorable to the government, permits a finding of guilty beyond a reasonable doubt." Straub, 508 F.3d at 1008.

violated the district court's orders. The September 16, 2008 verbal order and September 23, 2008 Standing Order both precluded Dickstein from filing a motion to withdraw based on the Hirmers's failure to pay his fees. The record reflects that Dickstein clearly understood that. Yet, this is exactly what Dickstein eventually did. Dickstein deliberately and intentionally, not as a result of accident or negligence, filed a motion to withdraw based on the Hirmers's failure to pay him.

Dickstein argues that his mere filing of the motion to withdraw cannot, as a matter of law, constitute a refusal to obey the district court's order to continue representing the Hirmers. Dickstein rather artfully contends that he did not refuse to represent the Hirmers, he just submitted the issue of continued representation for the district court's determination. If the district court had refused his request, he would have continued to represent the Hirmers.[8] The problem for Dickstein is that the district court's September 16 verbal order and September 23 Standing Order did not order him to continue representing the Hirmers. Rather, these two orders explicitly and clearly prohibited him from filing a motion to withdraw on the basis of nonpayment of fees. Thus, the deliberate act of filing the motion to

---

[8]As the district court found, this claim is rather disingenuous given that, when the district court did deny Dickstein's request to withdraw, he filed a motion for reconsideration in which he stated he was "unwilling" to continue representing the Hirmers, and then, during the hearing on the motion for reconsideration, made it clear by his tone that he had no intention of continuing his representation regardless of what the district court ruled.

13

withdraw on that precise basis was a willful violation of the district court's orders.

Dickstein's argument that his motion to withdraw was based on issues other than lack of payment is unpersuasive. Dickstein's motion to withdraw made statements about Dickstein's severe financial straits, which he claimed were caused by his continued representation of the Hirmers. However, the motion to withdraw relied explicitly and solely on the Hirmers's failure to pay him for past services and inability to pay for services to be rendered in the future as the basis for withdrawing. The motion to withdraw did not mention, much less argue, that Dickstein was complying with any ethical obligations in seeking to withdraw. Dickstein did not raise these other issues until his motion for reconsideration, after his motion to withdraw was denied.[9]

Additionally, the district court did not believe Dickstein's testimony that he was in dire financial straits at the time he filed his motion to withdraw. In support of its finding, the district court emphasized that there was no other evidence to support Dickstein's claim, Dickstein made no effort to bring these other issues to the court's attention sooner, and Dickstein filed his motion to withdraw ten days

---

[9]Dickstein devotes much of his appeal brief to discussing various ethical rules governing when lawyers in California or Florida may or must withdraw from representation. However, Dickstein did not cite any of these rules (or the circumstances underpinning them) as the basis for his motion to withdraw, and the district court found that Dickstein was not motivated by these ethical rules when he filed his motion to withdraw.

after he asked the Hirmers how they were going to pay for his continued representation and they did not respond. The district court found that Dickstein's other reasons were a pretext for the real reason—the Hirmers's failure to pay Dickstein's fees. Credibility determinations are generally the province of the fact finder, and in the case of a bench trial, the fact finder is the district court. See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). Dickstein has not given us a reason to disturb the district court's credibility finding. Moreover, Dickstein's discredited testimony is substantive evidence of his guilt. See United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

Dickstein also willfully violated the district court's Standing Order by failing to make financial arrangements that were sufficient to last him through appeal of the Hirmers's case.[10] It is clear from Dickstein's early statements to the district court that he knew from the beginning that it was unlikely he would be paid from the Hirmers's assets subject to forfeiture and that he needed to find "alternate financing." He also knew that the case's complexity and voluminous discovery meant that preparing an adequate defense would be expensive and

---

[10]While Dickstein testified that he thought the Standing Order only required him to represent the Hirmers through perfection of appeal, the financial arrangements Dickstein made with the Hirmers did not even carry him to trial, and Dickstein moved to withdraw before sentencing. Thus, even under Dickstein's own understanding of the district court's orders, his violation was willful.

15

would require judicious use of funds. Yet, Dickstein had used up the agreed-upon retainer by January 2009, before the trial had even taken place, and had moved to withdraw for failure to pay before his clients were sentenced. At a minimum, Dickstein's actions amounted to reckless disregard for the administration of justice, which is sufficient to support a criminal contempt conviction. See Burstyn, 878 F.2d at 1324.

**AFFIRMED.**