[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14656
_____

D.C. Docket No. 1:11-cr-20798-JAL-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRENCE JOHNSON,
a.k.a. T.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 20, 2013)

Before HULL and MARTIN, Circuit Judges, and BOWEN,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District
of Georgia, sitting by designation.

After a guilty plea, Terrence Johnson appeals his conviction and sentence for conspiracy to possess with intent to distribute Oxycodone.  For the first time on appeal, Johnson claims that the government breached the plea agreement when, at sentencing, it (1) refused to recommend a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1 and (2) recommended a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  After oral argument, review of the record, and consideration of the parties' briefs, we find no plain error and affirm.

## I.    BACKGROUND FACTS

### A.    Indictment

In November 2011, a grand jury returned a four-count indictment against Defendant Johnson, his brother Toriano Johnson ("Toriano"), and several other codefendants.  The indictment named Defendant Johnson only in Count 1 and Count 4, charging him with (1) conspiring to possess with intent to distribute cocaine and cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), and (2) conspiring to possess with intent to distribute Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 4).

**B.    Plea Agreement**

In May 2012, Johnson entered into a plea agreement, in which he agreed to plead guilty to Count 4 (the Oxycodone conspiracy), and the government agreed to dismiss Count 1 (the cocaine conspiracy) after sentencing.

In Paragraph 6 of the plea agreement, the government further agreed to recommend (1) a total three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, and (2) a sentence at the low end of the guidelines range, as that range is determined by the district court.  The government would be excused from these obligations, however, if one of the following three exceptions applied: (1) if the defendant "fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct"; (2) "is found to have misrepresented facts to the government prior to entering into this plea agreement"; or (3) "commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official."[1]

---

[1]We read the three exceptions as applying to the government's obligation to recommend the entire three-level reduction for acceptance of responsibility. Johnson does not argue on appeal (either in his initial or reply brief) that the three exceptions apply only to the extra one-level reduction (as opposed to the entire three-level reduction), and he does not allege any ambiguity in the plea agreement or otherwise challenge the government's understanding of Paragraph 6.  Accordingly, he has abandoned any such arguments.  See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (stating that a claim or issue not "plainly and prominently" raised on appeal will be considered abandoned).

Another provision in Defendant Johnson's plea agreement authorized the government to inform the district court and the probation office "of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background," subject to the other terms of the agreement. The government also reserved the right to "make any recommendation as to the quality and quantity of punishment," subject "only to the express terms of any agreed-upon sentencing recommendations contained in this agreement." The plea agreement contained a provision waiving Johnson's right to appeal his sentence except in certain limited circumstances.

## C.    Plea Hearing

At the change-of-plea hearing, the government described the facts of Defendant Johnson's Oxycodone offense that would have been proved at trial. The government stated that the Federal Bureau of Investigations ("FBI") and local law enforcement investigated a "traditional" drug-trafficking organization that received drugs from a supplier and distributed them to the public. Johnson purchased or obtained Oxycodone pills from individual co-conspirators, both indicted and unindicted, and transported them to Tallahassee, Florida, where the drugs would be sold for a significant profit. According to the government, Johnson agreed that his relationship with his co-conspirators "constituted more than a buyer-seller

4

relationship."  The government stated that Johnson moved approximately 4,400 Oxycodone pills in this fashion, each averaging 30 milligrams in strength.

Defendant Johnson expressly admitted the facts as described by the government and pled guilty to Count 4.  The district court then read most of the plea agreement to Johnson, including Paragraph 6, which concerned the acceptance-of-responsibility reduction and the recommendation for a sentence at the low end of the guidelines range.  Johnson affirmed that he had read the plea agreement, discussed it with his attorney, and understood its terms.

## D.    Original Presentence Investigation Report

The original Presentence Investigation Report ("PSI") was issued in August 2012.  In a section entitled "The Offense Conduct," the PSI described in detail the drug-trafficking activities of Defendant Johnson and his codefendants. Specifically, the PSI stated that law enforcement officers mounted a federal investigation into a "violent drug trafficking organization (DTO)" that operated from an apartment complex and used the complex as a "drug trap."  Members of this DTO were "tied to homicides and armed robberies."  As part of the investigation, law enforcement agents conducted wiretaps on cell phones belonging to various DTO members, including Defendant Johnson and his brother, Toriano.

Agents learned that one DTO member, Dwayne Miller, was involved with cocaine and MDMA, served as the primary "lieutenant" for the "Johnson brothers," and "received pre-packaged drugs from them for distribution." Agents also learned that Defendant Johnson and Toriano funded the purchase of Oxycodone pills that were shipped in bulk to unindicted co-conspirators. The "Johnson brothers" used a house to store the drugs before distribution. During the course of the conspiracy, the DTO possessed and distributed in excess of five kilograms of cocaine, at least 200 grams of crack, at least 1,000 MDMA pills, at least 30,000 Oxycodone pills, and at least 3.627 kilograms of marijuana.

In a section entitled "Role Assessment," the PSI stated that Toriano headed the DTO and supplied cocaine, Ecstasy, and marijuana to the DTO for distribution. Defendant Johnson, on the other hand, was the "supervisor" of the DTO, and used the DTO to distribute Oxycodone and marijuana. Defendant Johnson was also involved in the cocaine conspiracy "to the extent that he would assist Toriano intermittently when Toriano was not available for delivery or distribution." The PSI did not assign Johnson any responsibility for cocaine, but held him accountable for only 4,400 Oxycodone pills.

The PSI noted that Defendant Johnson had provided a statement accepting responsibility for his charged Oxycodone-conspiracy offense, as follows:

> I accept responsibility for what I was accused of in the Indictment. The factual proffer, announced by the government in open court was

6

accurate, and I assume accountability for my actions. In reflection, I am very remorseful for the laws that I have broken and the impact upon my family and loved ones. In addition to this statement, I was previously debriefed by the prosecutor and various agents.

The original PSI calculated a base offense level of 30, pursuant to U.S.S.G. § 2D1.1(a)(5), and added a 3-level enhancement under § 3B1.1(b) for Defendant Johnson's role as a manager or supervisor of a criminal activity involving at least five participants. Johnson received a 3-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a) and (b), resulting in an adjusted offense level of 30. Johnson was originally placed into criminal history category of IV, which, combined with the offense level of 30, yielded an advisory guidelines range of 135 to 168 months' imprisonment.

The original PSI then classified Defendant Johnson as a career offender under U.S.S.G. § 4B1.1, which raised his offense level to 34 and automatically placed him into a criminal history category of VI. Coupled with a 3-level reduction for acceptance-of responsibility, Johnson's total offense level became 31, which, combined with a criminal history category of VI, yielded an advisory guidelines range of 188 to 235 months' imprisonment. Johnson's Oxycodone-conspiracy offense carried a statutory maximum sentence of 30 years, with no mandatory minimum. See 21 U.S.C. §§ 841(b)(1)(C) and 851.

**E.    Objections to the Original PSI**

Defendant Johnson filed an "Initial Response" to the original PSI, raising a number of objections.  In the "Preface" to his response, Johnson stated that a "significant and critical" aspect of his objections concerned a "misinterpretation of his relationship with his younger brother," Toriano.  Johnson explained that he "has always maintained a very real, loving and close relationship with his brother," and that he and Toriano "regularly communicated with each other as brothers . . . not necessarily as co-conspirators or co-defendants."  Johnson's Preface further explained that the PSI inaccurately described the two brothers' relationship, stating:

> The factual proffer and interpretation of their relationship on this PSI fails to be able to accurately distinguish between a fraternal versus a conspiratorial relationship.  If they were both . . . involved in illicit activities, didn't conceal them from each other, and freely discussed their activities, those communications were indicative of trust and openness rather than establishing and furthering a criminal conspiracy.

> Every communication between the two brothers cannot be characterized as criminally conspiratorial.

Defendant Johnson then laid out his specific factual and legal objections to the PSI.  Among his factual objections, Johnson challenged the PSI's use of the terms "violent drug trafficking organization," "homicides and armed robberies," and "drug trap," arguing that these terms were inflammatory and had "nothing to

do with [Johnson] and his actions." Similarly, he objected to being characterized as a member of a formal DTO.

Defendant Johnson further objected to the PSI's description of his involvement in drugs and his relationship with Toriano, asserting that (1) he and Toriano did not have a "partnership" to sell drugs, (2) there was no illegal entity called "Johnson Brothers," and (3) Johnson's "main criminal activity" concerned the acquisition and sale of marijuana, although he was also involved with the sale of Oxycodone on "a limited basis." Johnson stated that he "had nothing to do with cocaine."

As to the PSI's guideline calculations, Defendant Johnson objected to the supervisory role enhancement under § 3B1.1, asserting that he was involved "in a small, practically sole proprietorship, criminal enterprise," despite having a "loose association" with other co-conspirators. Johnson also objected to the career-offender designation under § 4B1.1, arguing that his two prior predicate convictions arose out of the same arrest.

The government responded to Johnson's objections, countering most of his factual assertions. The government argued, inter alia, that evidence produced at sentencing would refute Johnson's statements regarding his non-conspiratorial relationship with his brother and his lack of participation in the DTO. Moreover, evidence would show that Johnson "did assist in trafficking cocaine for his brother

[Toriano] on occasion," although Johnson was mainly involved with the distribution of marijuana and Oxycodone.

As to Defendant Johnson's legal objections, the government argued that the three-level role enhancement was proper because, according to the evidence, Johnson was the leader of the Oxycodone ring. The government conceded, however, that Johnson did not qualify as a career offender.

The government then presented its own objections to the original PSI. The government's response stated that Johnson "debriefed falsely about a material fact, including, but not limited to, the relationship between himself and his brother, Toriano," and that Johnson "has denied, through his objections, material offense conduct." Accordingly, the government advised that, at sentencing, it (1) would seek an additional enhancement for obstruction of justice; (2) would not recommend a reduction for acceptance of responsibility; and (3) would not recommend a sentence at the low end of the guidelines range.

Shortly after the government's response, and before the sentencing hearing, Johnson withdrew all of his objections to the PSI, except for the objection to the supervisory role enhancement.

Defendant Johnson also filed a sentencing memorandum, challenging the government's position on obstruction of justice and acceptance of responsibility. Johnson argued that he had made it clear to the government before the debriefing

10

that he would not discuss Toriano because of their familial relationship. And Johnson had freely provided information about himself and his other codefendants. Thus, Johnson argued, he had clearly demonstrated acceptance of responsibility. Johnson also noted that his objections to the PSI were geared at making the district court "view him as a 'person,' [who] was part of a genuine family, as opposed to stripping him of his humanity and just being a 'defendant.'"

## F.     Sentencing Hearing

At the sentencing hearing, Johnson's defense counsel pointed out that, as a result of the defense's objections to the PSI, the government had reversed its position on obstruction of justice and acceptance of responsibility. Specifically, defense counsel stated:

> Your Honor, just for preservation of the record, there's another issue that's going on here. The issue is this: I'm caught between a rock and a hard place. My client has pled guilty and clearly has accepted responsibility.
>
> However, as a result of objections that I filed late Friday I received a responsive pleading from the Government where they're looking to now affect acceptance of responsibility and obstruction of justice.

Defense counsel indicated that there were "certain factual issues" that Johnson wanted to discuss with the government in an "informal manner," including the amount of drugs involved. Defense counsel also commented that

11

Johnson wanted "full advocacy" at sentencing, and that the government's "adversarial position" at sentencing was "unexpected."

When the district court asked if the government was still pursuing its objections, the government responded in the affirmative, stating that Johnson's "gamesmanship" demonstrated a lack of genuine acceptance of responsibility. The government explained that Johnson had not debriefed "fully and honestly":

> While at the same time saying he wants to resolve his case, [Johnson] doesn't debrief fully and honestly. While at the same time saying whatever it takes to get a plea agreement, to get the Government to agree to a certain amount so that he falls within a certain range and it's stipulated, now he wants to readdress that. This is part of the way Mr. Johnson operates.

The government acknowledged that the plea agreement bound it to "certain obligations," but stated that the district court "should know the full force and effect" of Johnson's criminal conduct, so that it could impose a proper sentence.

After a recess, Defendant Johnson withdrew the rest of his objections to the PSI. Nevertheless, the government refused to change its position, asserting that Johnson's "failure to debrief honestly was material as it related to the actions of his brother, not just in not implicating his brother, but in denying his own involvement in the cocaine aspect of this DTO."

The government then called FBI Agent José Perez, who served as the lead agent in the investigation leading to Defendant Johnson's arrest. Agent Perez testified that Toriano was the head of the drug conspiracy, in charge of obtaining

12

drugs from different suppliers and giving them to other members of the conspiracy for sale. Johnson was primarily responsible for supplying marijuana to the DTO. Intercepted phone calls revealed that Johnson, who had been recently released from prison, did not want to participate in cocaine trafficking "because he felt that it might cause him to spend longer time in jail if he was caught." However, Johnson and Toriano "openly spoke about drugs" being sold by the DTO, which included crack and powder cocaine in addition to marijuana. Moreover, the co-conspirators delivered the drug proceeds to either Toriano or Johnson, and, at least according to one co-conspirator, delivering the money to one was for practical purposes the same as delivering the money to the other. At times, Toriano and Johnson would combine their proceeds to purchase more drugs and to pay rent on their barbershop.

Agent Perez also testified that Defendant Johnson was directly involved in cocaine trafficking, at least to some degree. For example, the FBI intercepted phone calls between Toriano and Defendant Johnson in which they discussed how much cocaine one of the co-conspirators had in his supply. In those discussions, Toriano and Johnson referred to crack cocaine by using the code word "ray." The FBI also intercepted phone calls from a customer to Defendant Johnson asking for more "clean," a term that the investigators believed meant cocaine. One co-

13

conspirator claimed that, on at least one occasion, when Toriano was out of town, Johnson delivered cocaine in Toriano's place.

Agent Perez testified that Defendant Johnson was debriefed shortly after his arrest in November 2011. Both Agent Perez and the prosecutor, as well as several other agents, were present during this debriefing. From the beginning, Johnson made clear that he would not talk about anything that implicated Toriano or related to Toriano's activities. Consequently, Johnson "did not either confirm or deny anything that in any way touched upon his brother," and did not provide any misinformation in this regard.

Agent Perez testified, however, that Johnson repeatedly denied any involvement in trafficking cocaine, although he freely admitted to dealing in marijuana and Oxycodone. Johnson explained to investigators that he wanted to avoid involvement in cocaine because he was aware of the applicable mandatory minimum penalties. During the debriefing, investigators made a concerted effort to phrase questions concerning cocaine in a way that Defendant Johnson could answer without implicating Toriano. Nevertheless, Johnson continued to deny any involvement in cocaine trafficking. Agent Perez acknowledged that it was "difficult to conduct an honest debrief" without implicating Toriano, but opined that Johnson denied any involvement in cocaine trafficking in order to protect himself.

14

According to Agent Perez, Defendant Johnson's refusal to discuss Toriano and his own involvement in cocaine trafficking obstructed the FBI's ability to discover (1) the roles of other co-conspirators; (2) the location of guns, drugs, and money that remained hidden; (3) the sources of supply for the drugs; and (4) the substance of the coded phone calls between Johnson and Toriano.

After Agent Perez's testimony, Johnson's defense counsel again challenged the obstruction-of-justice enhancement. Defense counsel pointed out that the government debriefed Defendant Johnson before offering the plea agreement, and was aware of Johnson's refusal to discuss Toriano before the debriefing. Yet the government did not accuse Johnson of obstructing justice until he objected to the PSI. Defense counsel argued that Johnson may not have provided substantial assistance to the government, given his refusal to discuss Toriano, but this lack of substantial assistance did not constitute obstruction of justice.

As to Defendant Johnson's denial of his own involvement in trafficking cocaine, defense counsel suggested that Johnson may have misinterpreted the government's questions about cocaine trafficking as questions directed at Toriano. After all, there was no documentation showing exactly what was said during the debriefing session, and thus no real evidence that Johnson obstructed anything. Defense counsel concluded that the government was recommending the obstruction-of-justice enhancement merely because it did not like Defendant

15

Johnson's objections to the PSI, not because Johnson actually obstructed justice. As to acceptance of responsibility, defense counsel stated: "To say [Johnson] hasn't accepted responsibility, he pled guilty. He met with them. I mean, come on. Here he is, about to be sentenced. Of course he's accepted responsibility."

In response, the government acknowledged that Defendant Johnson had made it clear before the debriefing that he would not implicate Toriano. The government contended, however, that its stance on obstruction of justice and acceptance of responsibility stemmed from Johnson's denial of his own involvement with cocaine, as demonstrated by Johnson's objections to the PSI. And Johnson's withdrawal of his objections further evidenced his failure to accept responsibility, given that the PSI still discussed Johnson's involvement with cocaine trafficking and the DTO.

## G.    District Court's Fact Findings

The district court found (1) that Johnson was involved in trafficking cocaine, as demonstrated by Agent Perez's testimony, and (2) that Johnson willfully and affirmatively denied his own involvement in cocaine trafficking, which constituted a material falsehood. The district court found that Johnson's false denial of his involvement in cocaine trafficking "obstructed or impeded the official investigation or prosecution of the instant offense and prevented the Government from identifying roles of other persons, sources of supply and finding evidence of

16

drugs." Thus, the district court determined that Johnson qualified for an obstruction-of-justice enhancement under § 3C1.1.

The district court further found that Johnson did not qualify for a two-level reduction for acceptance of responsibility under § 3E1.1(a) because he falsely denied relevant conduct, i.e., trafficking in cocaine. The district court noted that, in "extraordinary cases," both an enhancement for obstruction of justice and a reduction for acceptance of responsibility could apply, but that this was not such an extraordinary case, given Johnson's denial of his own involvement in cocaine trafficking.

## H.    Revised PSI

Based on the district court's findings at the sentencing hearing, the probation office issued a revised PSI, which changed the original PSI by (1) removing the career-offender designation, (2) adding a two-level increase for obstruction of justice under § 3C1.1; and (3) removing the three-level reduction for acceptance of responsibility under § 3E1.1. As a result, Johnson's total offense level became 35, which, combined with the original criminal history category of IV, yielded an advisory guidelines range of 235 to 293 months' imprisonment.

## I.    Johnson's Sentence

At the sentencing hearing, Johnson's defense counsel requested a downward variance to the original guidelines range of 135 to 168 months, on the basis that

17

Johnson's refusal to answer questions during debriefing stemmed from his feelings for his younger brother, Toriano, and from his lack of education and sophistication. Defense counsel also pointed out that the plea agreement obligated the government to recommend a sentence at the low end of the guidelines range.

Johnson himself then spoke, asserting that he had accepted responsibility and was honest with the investigators and the prosecution. Johnson nonetheless continued to deny his own involvement in cocaine trafficking, stating: "I can't tell them nothing about cocaine that I don't know."

The government objected to a downward variance, but recommended a sentence of 235 months, the low end of the new guidelines range. The district court followed the government's recommendation and sentenced Johnson to 235 months in prison, to be followed by 8 years of supervised release.

Although at sentencing Johnson objected to the obstruction-of-justice enhancement and claimed that he had accepted responsibility, Johnson never claimed that anything the government had said or done breached his plea agreement.

## II.    DISCUSSION

### A.    Plain Error Standard of Review

Ordinarily, we review de novo whether the government breached a plea agreement. United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004).

18

However, where the defendant fails to raise the issue of breach in the district court, we review it only for plain error. Puckett v. United States, 556 U.S. 129, 133-34, 129 S. Ct. 1423, 1428 (2009); United States v. Romano, 314 F.3d 1279, 1281 (11th Cir. 2002). We may reverse under plain-error review only if (1) an error occurred, (2) the error was plain, (3) the error affected the defendant's substantial rights, and (4) the error seriously affected "the fairness, integrity, or public reputation of the judicial proceedings." Romano, 314 F.3d at 1281.

In this case, Johnson failed to argue before the district court that the government breached the plea agreement. At most, Johnson's comments at sentencing indicated to the district court that (1) Johnson objected to the enhancement for obstruction of justice, and sought a reduction for acceptance of responsibility; (2) the government's adverse stance on these issues was unexpected; and (3) the government improperly sought these increases merely because Johnson objected to the PSI. Johnson never told the district court that the government's position on obstruction of justice and acceptance of responsibility violated the terms of the plea agreement.

We recognize that there is no magic word requirement to preserve an objection for appeal. However, the objection "must be raised in such clear and simple language that the trial court may not misunderstand it," and must be "sufficient to apprise the trial court and the opposing party of the particular

19

grounds upon which appellate relief will later be sought." United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2007) (internal quotation marks omitted); United States v. Massey, 443 F.3d 814, 819 (11th Cir. 2006).  After all, the essential purpose of a proper objection is to give the district court "the opportunity to consider and resolve" the issue in the first place.  Puckett, 556 U.S. at 134, 129 S. Ct. at 1428.  As the Supreme Court explained, the district court "is ordinarily in the best position to determine the relevant facts and adjudicate the dispute" and "can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome."  Id.

Here, although Johnson challenged the obstruction-of-justice enhancement and asked for an acceptance-of-responsibility reduction, he said nothing, either in his written objections to the PSI or in his arguments at the sentencing hearing, that should have prompted the district court to revisit the plea agreement and examine the document to make sure the government complied with its obligations.  Simply put, Johnson did not give the district court an opportunity to consider and resolve the breach issue.  See Puckett, 556 U.S. at 134, 129 S. Ct. at 1428; Straub, 508 F.3d at 1011.  Thus, Johnson failed to properly preserve his objection, and we review his claim of breach only for plain error.  See Romano, 314 F.3d at 1280-81 (reviewing a breach-of-plea-agreement argument for plain error because the defendant failed to raise the breach issue before the district court, even though, at

sentencing, the defendant expressly challenged the government-recommended guideline enhancements that allegedly constituted breach).

## B.    Alleged Breach of the Plea Agreement

In interpreting a plea agreement, we look "to the defendant's reasonable understanding at the time he entered the plea." United States v. Rewis, 969 F.2d 985, 988 (11th Cir. 1992). If the government disputes the defendant's understanding, we use "objective standards" to determine the terms of the plea agreement. Id. Although an ambiguous plea agreement must be interpreted against the government, "we do not accept a hyper-technical reading of the written agreement or a rigidly literal approach in the construction of the language." Copeland, 381 F.3d at 1105-06 (internal quotation marks omitted).

Johnson contends that the government breached the plea agreement by (1) recommending a denial of a reduction for acceptance of responsibility, and (2) seeking an enhancement for an obstruction of justice. A review of the plea agreement, however, reveals no plain breach in this regard.

As explained above, Paragraph 6 provided that the government would not be required to recommend a reduction for acceptance of responsibility if Johnson (1) failed to accurately and completely disclose to the probation office the circumstances surrounding the relevant offense conduct; (2) "misrepresented facts to the government prior to entering into this plea agreement"; or (3) committed any

21

misconduct after entering into the plea agreement, including making "misrepresentations to any governmental entity or official."

Although the presence of even one exception would have excused the government from its obligations, Johnson arguably met all three exceptions. Agent Perez's testimony at sentencing showed that Johnson, at least to some extent, directly participated in cocaine trafficking. Yet Johnson expressly denied being involved in cocaine, both during his pre-plea debriefing and in his post-plea objections to the PSI. Thus, Johnson quite literally (1) failed to make an "accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct," i.e., trafficking in cocaine; (2) "misrepresented facts to the government prior to entering into this plea agreement"; and (3) committed "misconduct" by "making false statements or misrepresentations" regarding cocaine trafficking to the probation office, the prosecutor, and the district court.

We recognize that, when entering the plea agreement, the government knew that Johnson denied being involved in cocaine, knew that this denial was false, and yet still agreed to recommend a reduction for acceptance of responsibility. However, the language of the three exceptions in Paragraph 6 is broad and does not depend on what the government knew or did not know at the time it entered the plea agreement. Thus, we cannot say that the government plainly breached the agreement by failing to recommend a reduction for acceptance of responsibility.

22

See Puckett, 556 U.S. at 143, 129 S. Ct. at 1433 (observing that an error in breach cases will not always be "plain" because "[p]lea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt," and "the Government will often have a colorable (albeit ultimately inadequate) excuse for its nonperformance").

Neither can we say that the government plainly breached the plea agreement by recommending an enhancement for obstruction of justice. The plea agreement did not expressly prohibit the government from recommending an obstruction-of-justice enhancement, especially where Johnson's conduct excused the government from recommending an acceptance-of-responsibility reduction. See United States v. Knight, 562 F.3d 1314, 1328 (11th Cir. 2009) ("[A]n acceptance-of-responsibility reduction and obstruction-of-justice enhancement should be applied in tandem only in 'extraordinary cases.'" (quoting U.S.S.G. § 3E1.1, comment. (n.4)).

Because we discern no plain error in this case, we affirm Johnson's conviction and sentence.

**AFFIRMED.**