[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12139

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DESHAWN MARTIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cr-00187-WFJ-TGW-1

_____

Before ROSENBAUM, LAGOA, AND ABUDU, Circuit Judges.

PER CURIAM:

Deshawn Martin appeals his sentence of 240 months' imprisonment for conspiracy to commit Hobbs Act robbery and Hobbs Act robbery in violation of 18 U.S.C. §§ 1951(a), (b), 2, and 371. Martin argues that the district court procedurally erred at sentencing by failing to give any consideration to the guideline sentencing range. He also argues that the district court substantively erred by imposing a sentence that was unreasonable because it did not give sufficient weight to the guideline range and created unwarranted sentencing disparities between Martin and similar offenders. After careful review, we affirm in part and vacate in part the district court's sentence and remand for resentencing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Deshawn Martin and his codefendant Shinel Waldrop were charged with conspiracy to commit Hobbs Act robbery and Hobbs Act Robbery in violation of 18 U.S.C. §§ 1951(a), (b), 2, and 371 (Counts One and Two). Martin was charged with an additional count of using a gun during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). In a written plea agreement, Martin pled guilty to Counts One and Two in exchange for the government dismissing Count Three.

The plea agreement set forth the factual bases of the charged offenses as follows: on October 15, 2021, Martin robbed a Mobil

gas station with a weapon before getting into a car with Waldrop, who drove them away. Martin also stipulated to four additional robberies that he committed in the plea agreement.

Shortly after Martin pleaded guilty, the district court sentenced Waldrop. The government highlighted that Waldrop cooperated by providing information on Martin's additional robberies and was assisting the government on pending murder charges against Martin in New York. During sentencing, Waldrop talked about her abusive relationship with Martin and said that she only agreed to help him with robberies out of fear. For example, she reported to the police an instance of physical abuse on October 15, 2021, and another one in November 2021. She also added that she would likely be deported back to Trinidad after serving her sentence. In light of a substantial-assistance motion filed by the government, Waldrop's offense level was reduced to 15, placing her in criminal history category of I. The district court sentenced Waldrop to 18 months in prison and made some comments. The district court urged Waldrop to find a female support network so that she would not "be a punching bag for the next Alpha male that comes along." And if Waldrop was subjected to supervised release instead of deportation after serving her sentence, the district court imposed a special condition in which Waldrop could have "[n]o contact with [Martin], ever." The district court said that she was "going to be a very old lady" when Martin got out of prison, and it did not want Waldrop to waste the "whole life ahead of [her]." And if she violated that condition, she would be imprisoned for three years.

Turning to Martin's first sentencing, the first amended presentencing investigation report ("PSI") assigned Martin a total offense level of 21, a criminal history category of IV, and a guideline range of 57 to 71 months' imprisonment. But that PSI did not include the four additional robberies that Martin stipulated to in his plea agreement. While the district court denied the government's motion to revise the PSI, it ultimately continued the sentencing hearing to allow for a recalculation of Martin's guideline range to account for the four robberies.

Martin's counsel objected to the continuance, arguing that the government failed to object to the guideline calculations within the designated period, especially since the government and the probation officer were aware of those four robberies when preparing the first amended PSI.

The district court stated that if Martin wanted to waive the correction to the PSI, he needed to waive it himself. But the district court cautioned Martin that his sentence would "certainly not [be] within the prior calculation" or even within the larger, recalculated guideline range. The district court also explained that he was "not making any predictions," but wanted to "respectfully and politely disabuse…Mr. Martin, of any belief that [it] was going to sentence him in the guidelines as they were calculated or maybe even as they are calculated under the new" PSI given his past and present criminal troubles.

The final, second amended PSI was filed and reported the following conduct. Martin and Waldrop traveled to Tampa,

Florida on October 15, 2021.  Along the way, they stopped by Plant City, where Waldrop bought a black hoodie and gloves from one store and a BB gun from another.  They stayed in a hotel in Plant City until dark before driving to a Mobil gas station in Waldrop's red Mustang.  Martin, wearing the black hoodie and gloves and brandishing the BB gun, forced the two owners of the gas station to open the cash register and hand over the cash.  Martin then ran to Waldrop's car, and they drove back to their hotel.  Several days later, on October 26, 2021, Martin and Waldrop flew from Orlando, Florida to Ronkonkoma, New York and committed another robbery.

This time around, the final, second amended PSI included the four additional robberies from Martin's plea agreement: (1) on October 20, 2021, Martin entered a Circle K gas station in Orlando, Florida, pointed a BB gun at the employee's face, and forced the employee to hand over the cash in the register; (2) on November 5, 2021, Martin robbed a Subway restaurant in Orlando, Florida with a BB gun, forcing the employees to surrender the cash in the register and to lie on their stomachs for ten minutes; (3) later that month, on November 27, 2021, Martin returned to the Circle K with a BB gun and committed the same crime; and (4) on December 14, 2021, Martin robbed a Dunkin Donuts in Orlando, Florida by using a BB gun to force an employee to give him money from a cash register.  He then forced two additional employees to lie on the floor, "slightly hit" one employee on the back of the head with the BB gun, and stole their wallets.

In detailing his criminal history, the PSI stated that in 2013, at age 17, Martin pleaded guilty to second-degree robbery and served 11 months in prison after he and two others knocked down, kicked, and punched a victim and stole his wallet. The victim identified Martin as the individual who threw the first blow but did not know who punched or kicked him afterward. In 2016, at age 19, he pleaded guilty to second-degree robbery after threatening a gas-station cashier with a BB gun and stealing $3,000 and a cell phone, for which he served six months in prison and then was released on parole. Four months later, he was imprisoned for 15 days for disorderly conduct. In 2018, about three months after his release from jail, Martin robbed a 7-Eleven store with a BB gun, taking $730 and a pack of cigarettes. He came back to that store less than three months later and took another $738. For the 7-Eleven robberies, Martin served 34 months. Martin committed the instant offenses while on parole for the 2016 and 2018 robbery convictions.

Robberies aside, Martin was arrested and indicted for domestic violence for allegedly punching Waldrop in the face in November 2021, but the charges against him were dropped. Finally, at the time of sentencing, Martin was facing a first-degree murder charge in New York for allegedly entering a business with a firearm and shooting a man at close range in the forearm, chest, and head.

The PSI's discussion of Martin's personal background noted the lack of parental figures in his life. He was raised by his paternal grandmother who emotionally and physically abused him, forced him to perform labor around the house, and locked him in his

23-12139               Opinion of the Court                    7

room.  As a result, Martin suffered from depression and anxiety and used marijuana daily to cope.

The probation officer assigned Martin a base offense level of 20 pursuant to U.S.S.G. § 2B3.1(a), and increased it by 10 levels for use of weapon that appeared to be a firearm to threaten victims, physically restraining them through threat of violence, and the multiple-count adjustment.  The probation officer then decreased it by three levels for acceptance of responsibility pursuant to § 3E1.1.  In the end, Martin's total offense level was 27 with a criminal history category of IV, producing a guideline range of 100 to 125 months' imprisonment.  The maximum statutory penalty for each count was 240 months' imprisonment.

The probation officer recommended 180 months' imprisonment for each count to run concurrently after factoring in the mitigating factors—Martin's abusive childhood and untreated mental health and substance abuse issues—and the aggravating ones—prior robbery convictions in New York, pattern of immediate recidivism, and pending murder charge in New York.  The government, highlighting the serious, violent, and dangerous nature of Martin's offenses and his pattern of engaging in criminal behavior despite prior sentences, argued for 125 months' imprisonment. Martin requested a sentence at the lower end of the guideline range or a downward variance, citing his childhood traumas, lack of parental figures, and avoidance of unwarranted sentencing disparity with Waldrop as justifications.  He also stated that he accepted responsibility for his crimes and wanted to be present in his son's life.

The district court adopted the guideline calculations in the final, second amended PSI and sentenced Martin to 240 months' imprisonment on each count to run concurrently. Although the district court stated that it would not consider Martin's pending charges in New York for sentencing purposes, it justified its upward variance by detailing his past robberies, noting the repeated use of a weapon that appeared to be a firearm to threaten and rob other people. It noted that the use of a BB gun, instead of an actual gun, was irrelevant because "no one is going to say, oh, that's a BB gun, I'm not afraid." It also highlighted how Martin used the gun to tap, but not hard, a Dunkin Donuts employee on the head and to force several employees, including a pregnant one, to lie on the ground under threat of fire.

The district court continued to focus on Martin's criminal past, from his conviction at 17 years old to his robbery of a gas station at 19. It commented that, all in all, there was "a remarkable amount of violence" and found the guideline range "woefully insufficient." Therefore, it decided to "vary[] upward based upon the violence, the recidivism, the need for specific deterrence, meaning to lock up Mr. Martin, and the need for general deterrence to protect the public and deter others from this activity." Had Martin been informed about the possibility of serving his sentence consecutively in his plea agreement, the district court noted that it "would have given [him] 40 years." The district court concluded that accounting for the 18 U.S.C. § 3553(a) factors, "240 months [wa]s the minimum" and "the sentence imposed [wa]s sufficient but not

greater than necessary to comply with the statutory purposes of sentencing."

Martin objected to the sentencing "for appellate reasons." The district court clarified that the objection was to the "substantive unreasonableness of the sentence," to which Martin agreed.

This appeal timely followed.

## II.    STANDARD OF REVIEW

When reviewing a sentence for reasonableness, we utilize a two-step process to first ensure that the district court committed no significant procedural error and then determine whether the sentence was substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). When reviewing for procedural reasonableness, we ordinarily consider legal issues *de novo* and review factual findings for clear error. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). But if the defendant failed to preserve a challenge to the procedural error at sentencing, then we review for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014).

For substantive reasonableness of a sentence, we review under an abuse-of-discretion standard, considering the § 3553(a) factors and the totality of the circumstances. *United States v. Boone*, 97 F.4th 1331, 1338–39 (11th Cir. 2024). The party challenging the sentence bears the burden of showing that it is unreasonable. *Id.*

## III.    ANALYSIS

On appeal, Martin presents two issues: (1) the district court procedurally erred when imposing his sentence because it failed to

give any consideration to the guideline range; and (2) the district court's above-guideline sentence of 240 months was substantively unreasonable and created unwarranted sentencing disparities. We address each one in turn.

## A. Procedural Error

A district court commits a procedural sentencing error by, among other things, failing to consider the § 3553(a) factors or failing to explain the chosen sentence. *Gall*, 552 U.S. at 51. Section 3553(a) "explicitly directs sentencing courts to consider the Guidelines" and "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id.* at 50 n.6.

"To preserve an issue for appeal, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought," using clear and simple language that cannot be misunderstood. *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (quotation marks and citation omitted). Otherwise, the challenge is not preserved, and we review for plain error. *Vandergrift*, 754 F.3d at 1307. To establish plain error, a defendant must show: (1) an error, (2) that was plain or obvious, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the proceedings. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014).

To start, Martin frames his challenge as one of substantive reasonableness, but whether the district court erred in imposing a

sentence without considering the guideline range is a procedural one. *See Gall*, 552 U.S. at 49, 50 n.6, 51. And it is an objection that he did not preserve at sentencing. While he raised a broad objection to the sentence "for appellate reasons," his objection did not sufficiently apprise the district court that he sought to object on procedural grounds, especially after the court clarified, and he confirmed, that he objected to only the substantive reasonableness of his sentence. *See Straub*, 508 F.3d at 1011. Accordingly, his procedural challenge is reviewed for plain error. *See Vandergrift*, 754 F.3d at 1307.

Here, we do not find that the district court plainly or procedurally erred by failing to consult the guideline range. Indeed, the district court, at sentencing, calculated and acknowledged the guideline range several times, including commenting on how it was "insufficient." And none of Martin's arguments to the contrary are availing.

Martin argues that the district court already decided what kind of sentence to impose on Martin before the guideline range was calculated when it told Waldrop that she would be a "very old lady" before Martin was released from prison. But Martin overreads the significance of that comment. At Waldrop's sentencing, the parties acknowledged that Martin was facing a first-degree murder charge in New York. The "very old" comment could reasonably be construed as opining on a likely outcome once Martin was sentenced for both his federal and state crimes. There is no indication that the district court had already decided Martin's

sentence for the instant offenses before the guideline range was calculated.

Martin points to two additional comments by the district court: (1) its discussion of waiving any corrections to the PSI, and (2) its statements that his sentence would "extremely likely" vary upward above any guideline calculations. But those comments are taken out of context. The district court explicitly stated that it was "not predicting anything or making promises" on Martin's sentencing and solely wished to "respectfully and politely disabuse" Martin of any expectation of a within-guideline-range sentence given his lengthy criminal record. As for the comment about waiving corrections to the PSI, the district court only noted that Martin must be present in court so he could waive it. Under either instance, we do not find that there was any plain or obvious error.

## B. Substantive Reasonableness

To determine whether a district court committed a substantive error in sentencing, we look to whether the district court (1) failed to consider relevant factors that were due significant weight; (2) gave significant weight to an improper or irrelevant factor; or (3) committed a clear error of judgment by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). In order to determine whether a district court has committed a clear error in judgment, appellate courts must make the sentencing calculus themselves and review each step the district court took in making it. *Id.*

But we are mindful that even if we might reasonably have concluded that a different sentence was appropriate, that is insufficient to justify reversal of the district court. *Gall*, 552 U.S. at 51. So we will vacate a sentence "if, but only if, [we are] left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190.

We give "due deference" to the district court to consider and weigh the proper sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotation marks omitted). Some factors set out in § 3553(a) include the guideline range, the nature and circumstances of the offense, the criminal history of the defendant, the seriousness of the crime, adequate deterrence, and protection of the public. 18 U.S.C. § 3553(a). Though the district court must consider all the § 3553(a) factors, it does not have to mention each factor explicitly at the sentencing hearing. *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007). Instead, an acknowledgement by the district court that it considered the § 3553(a) factors is sufficient. *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007). The district court also does not have to give all the factors equal weight and is given discretion to attach more weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

Congress specifically commands the district court to consider the guidelines because they represent "an accumulation of knowledge and experience" and were promulgated over time by an expert agency with a statutory charge. *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006). Guidelines are important because they promote uniformity, and a district court must give the guideline range "real weight" in imposing a sentence. *Irey*, 612 F.3d at 1217 (quotation marks omitted). The district court, however, maintains discretion to give heavier weight to any of the § 3553(a) factors or combination of factors than to the guideline range. *Hunt*, 459 F.3d at 1184-85. We have clarified that the "advisory guidelines range is but one of many considerations" that a sentencing court must consider when sentencing a defendant, and we have "not attempted to specify any particular weight that should be given to the guidelines range, and…rejected any across-the-board prescription regarding the appropriate deference to give the Guidelines." *Rosales-Bruno*, 789 F.3d at 1254 (quotation marks omitted). Still, we have held that sentences were substantively unreasonable where the district court did not adequately consider the guideline range. *See United States v. Pugh*, 515 F.3d 1179, 1200 (11th Cir. 2008) (holding that the district court erred in not giving any "real weight" to the guideline imprisonment range of 97 to 120 months when sentencing the defendant to probation).

The district court also has wide discretion to decide whether the § 3553(a) factors justify a variance. *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010), *abrogated on other grounds by Van Buren v. United States*, 593 U.S. 374 (2021). A major variance

should be supported by a more significant justification than a minor variance. *Gall*, 552 U.S. at 50. In any event, "[a]fter settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* It must articulate a reasoned basis for exercising its "own legal decisionmaking authority." *Rita*, 551 U.S. at 356.

In imposing a variance, the district court can consider conduct already considered when calculating the guideline range. *United States v. Johnson*, 803 F.3d 610, 619–20 (11th Cir. 2015). Additionally, "a sentencing court may impose an upward variance based upon uncharged conduct as it relates to the history and characteristics of the defendant, as well as the need to promote respect for the law, afford adequate deterrence, and protect the public." *United States v. Butler*, 39 F.4th 1349, 1355–56 (11th Cir. 2022). The sentencing court may impose an upward variance if it concludes that the guideline range was insufficient in light of a defendant's criminal history. *Johnson*, 803 F.3d at 619; *see also United States v. Hunt*, 941 F.3d 1259, 1263–64 (11th Cir. 2019) (holding that an upward variance from 37 months' to 60 months' imprisonment was substantively reasonable because defendant had previously been charged with robbery 3 times and convicted of first-degree robbery with the use of a firearm). We have upheld upward variances matching the statutory maximum as reasonable when necessary to achieve the purposes set out in § 3553(a). *See United States v. Osorio-Moreno*, 814 F.3d 1282, 1286, 1288 (11th Cir. 2016) (affirming a 57-month upward variance to the statutory maximum sentence of 120

months' imprisonment in light of the defendant's lengthy criminal history, including repeated acts of violence against women and law enforcement officers).

Another sentencing factor district courts must consider is the need to avoid unwarranted sentencing disparities among similar offenders. 18 U.S.C. § 3553(a)(6). This directive arises from a purpose of the guidelines to provide certainty and fairness in sentencing. *United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009). Thus, "[a] well-founded claim of disparity . . . assumes that apples are being compared to apples." *Id.* at 1101 (quotation marks omitted). When considering a claim of disparity, we first consider whether the defendant is similarly situated to defendants he presents as comparators who received a different sentence. *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). We have made clear that there can be no unwarranted sentencing disparities between codefendants who are not similarly situated. *United States v. Johnson*, 980 F.3d 1364, 1386 (11th Cir. 2020). We have also indicated that the defendant's arguments about unwarranted disparity should be specific enough for it to "gauge." *United States v. Hill*, 643 F.3d 807, 885 (11th Cir. 2011) (noting that the defendant's argument that there was an unwarranted disparity between his sentence and others who have been convicted of fraud crimes throughout the country "would be difficult to gauge").

Addressing Martin's specific contention on unwarranted sentencing disparity first, we find that Martin failed to show that his sentence was disparate to those imposed on similarly situated

offenders.[1]   To the extent that Martin argued in his sentencing memorandum that his likely sentence was unjustifiably disparate to Waldrop's, he is not similarly situated to Waldrop because she was cooperating with law enforcement, was found by the district court to be a victim of Martin's abuse who was participating out of fear, and was facing deportation, which was its own form of punishment, general deterrence, and protection of the public. *See Johnson*, 980 F.3d at 1386.  And while on appeal he argues that his sentence was unjustifiably disparate to the sentences of other defendants convicted of Hobbs Act robbery, he fails to identify a single comparable defendant who received a lesser sentence.  Without an apple-to-apple comparator, Martin's argument for disparity is not specific enough to gauge any disparity.  *See Docampo*, 573 F.3d at 1102.

Still, we cannot find that Martin's sentence was substantively reasonable.  After a review of the sentencing record, we see no compelling justification to vary upward by 115 months and sentence Martin to the statutory maximum for a Hobbs Act robbery.  To be sure, a district court has discretion to impose a longer sentence than what the guideline range suggests, but that discretion is not limitless.  And here, there is a disconnect between the factors

---

[1] Martin arguably insufficiently apprised the district court of its sentencing-disparity argument during sentencing.  *See Straub*, 508 F.3d at 1011.  If he did, then we review under an abuse-of-discretion standard.  If he did not, then we review for plain error.  But we need not resolve this question because even under the more demanding abuse-of-discretion standard, Martin's argument still fails.

that the district court cited to calculate the sentence and the facts it purported to consider in justifying that sentence.

To start, although the district court acknowledged the guideline range, it only mentioned that it was "woefully insufficient" without referencing the upper or lower bounds of the range. And when it sentenced Martin to 240 months, it only noted that the sentence varied upward, but made no calculation or comment on the size of the 115-month upward variance. And the district court framed the 240-month sentence as "the minimum," suggesting that the sentence was the shortest possible punishment, when in fact, it was imposing the statutory maximum penalty for a Hobbs Act robbery. It also commented that, but for the plea agreement, it would have imposed two consecutive maximum sentences—so 480 months' imprisonment for a robbery with a BB gun, which is a 355-month upward variance—again without any reference to the guideline range.

Taken in aggregate, we question whether the district court gave "real weight" to the guideline range—which represents the knowledge, experience, policies, and purposes of the Sentencing Commission, which is composed of judges, lawyers, and policymakers—or relied on its own judgment that 240 months was the minimum possible sentence for a defendant like Martin. *See Pugh*, 515 F.3d at 1200.

And while the district court has discretion to determine that other § 3553(a) factors outweigh the guideline range, it still failed to justify such an extreme upward variance. First, the district court

23-12139            Opinion of the Court            19

commented on the "remarkable amount of violence" in Martin's criminal history. But aside from the pending New York charge which the district court announced would not be factored into sentencing, all remaining offenses involved only BB guns or no weapons at all. In Martin's first robbery offense in 2013, Martin did not carry a weapon, committed the offense with two other people, and was only confirmed to have delivered the "initial blow" to the victim and not the subsequent violent beating. And the brandishing of the BB gun in his robberies presented a threat of violence, but Martin did not fire the weapon, so we can't say he engaged in actual violence. While he did use the BB gun to tap an employee on the head during one of the robberies, the district court noted that it was not a hard tap. In sum, Martin's criminal history, New York charge aside, is a far cry from the "remarkable amount of violence" that the district court characterized.

Second, the district court stated that a long sentence was necessary to specifically deter Martin, a repeat offender. It noted Martin's prior sentences and violations of parole. But Martin's longest sentence at that point was 34 months. Specific deterrence is important, but the district court failed to explain why a 115-month upward variance to the statutory maximum of 240 months' imprisonment was necessary to specifically deter Martin when the guideline suggested a range between 100 and 125 months. Put otherwise, sentencing Martin to the low end of the guideline range—100 months—would still be 200% longer than any sentence he had previously served.

Third, the district court stated that the upward variance was necessary to protect the public from Martin and generally deter others from committing similar crimes.  But it again failed to explain how Martin's personal history, characteristics, criminal history, and conduct in perpetrating robberies with a BB gun posed a greater risk than other Hobbs Act robbery offenders to justify the statutory maximum.  It also seems counterintuitive for the district court to impose such an extreme punishment to deter others from committing similar crimes when the guideline—as an accumulation of knowledge, experience, policies, and expertise of the Sentencing Commission—counseled for a much shorter sentence.

We conclude that the district court abused its discretion by giving inadequate consideration to the guideline range and weighing Martin's criminal history and the need for specific and general deterrence unreasonably based on the facts it purported to consider, including Martin's largely nonviolent criminal history and limited time in prison prior to the instant offenses.  *See Irey*, 612 F.3d at 1189, 1217; *Hunt*, 459 F.3d at 1184-85; *Gall*, 552 U.S. at 50; *Rita*, 551 U.S. at 356.  Thus, we vacate Martin's sentence and remand for resentencing.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**